**Roosevelt FORD, Plaintiff-Appellant,**

**v.**

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections, et al., Defendants-Appellees.**

No. 83–2151.

United States Court of Appeals, Fifth Circuit.

Sept. 4, 1984.

---

Roosevelt Ford, pro se.

Patrick Zummo, Baker & Botts, Houston, Tex. (court-appointed), for plaintiff-appellant.

Jim Mattox, Atty. Gen., Richard W. Meyer, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Harold J. Krent, William Kanter, Attys., Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., for intervenor-U.S.A.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

REAVLEY, Circuit Judge:

This case requires that we decide whether the Magistrates Act, 28 U.S.C. § 636 (Supp. V 1982), authorizes a district court to refer a prisoner's civil rights action to a United States magistrate for jury trial without the parties' consent. Holding that the statute does not authorize such a reference, we vacate the district court's order of dismissal and remand.

**I**

The procedural history of this case is typical of prisoner civil rights actions and provides useful context for our effort to interpret the statute. Roosevelt Ford, a prisoner of the Texas Department of Corrections (TDC) housed at Huntsville, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 in January 1976 alleging unconstitutional denial of medical care (the 1976 action). The district court authorized service at government expense, 28 U.S.C. § 1915, and the defendants answered in March 1976. Ford wrote a letter to the district court in August 1977 explaining that his case had been pending almost two years; he asked that an attorney be appointed and requested a hearing. The court responded by letter in mid-August: because of the press of business, it had referred to a magistrate "all matters involving persons who have been convicted of violation of criminal statutes"; the reference was "for initial determination and recommendation," and if Ford had not "heard from the Magistrate within 90 days," he was to recontact the district court. This was the first and only notice Ford had from the district court that his case was referred to a magistrate.

Ford filed a second civil rights complaint in January 1980 (the 1980 action), again alleging denial of medical care and asserting as well various threats of violence by defendant Dan Lunsford, a TDC official responsible for delivery and security of prisoners to John Sealy Hospital. A magistrate directed service at government expense a month later, and the defendants filed their answer and jury trial demand in April 1980. The district court denied the defendant's motion for summary judgment in June 1980 and denied two motions for preliminary injunction filed by Ford in the latter part of 1980. There the case remained until February 1982, when a magistrate, acting without a formal order of reference, issued a "pretrial notice" setting the case for "pretrial conference" in March 1982 and establishing a schedule for discovery cut-off and the filing of pretrial statements. That conference took place in April 1982, and the magistrate filed a minute entry on April 13, 1982 consolidating the two cases.

The magistrate issued an order in March 1982 setting the original 1976 action for pretrial conference in June 1982 and establishing a pretrial schedule similar to the one imposed in the 1980 case. After receiving the March 1982 pretrial order, the defendants noticed Ford's deposition for May 11, 1982, at Huntsville. On May 8, Ford mailed his request that the court appoint another TDC inmate, Howard James Wallace, to assist Ford in the proceedings.[1] Wallace had prepared and filed all Ford's court papers and had agreed to assist Ford "voluntarily and free of charge." With no response from the court, Ford proceeded with his deposition on May 11, apparently with the assistance of an attorney referred by the State Bar of Texas.

The final pretrial conference in the consolidated cases was held on June 14, 1982,

---

1. Similarly, in the 1980 action, Ford had responded to a March 1982 defense motion for leave to depose the plaintiff by requesting again that the court appoint an attorney to represent him.

and it was apparently that day that the parties learned they would proceed to trial before the magistrate. After conducting the conference, the magistrate filed a minute entry denying Ford's request for inmate Wallace's assistance. The minute entry concluded: "Trial is set for June 26, 1982." On July 7, 1982, the clerk mailed to the parties a standard form notice that the case had been set for trial in Huntsville on July 26, 1982.

The defendants filed on July 23 their "objection to the court reference of the case to magistrate." They noted that they had not consented to trial before a magistrate as required by 28 U.S.C. § 636(c)(1) and that the upcoming proceeding was "in actuality a trial." They therefore objected to trial before the magistrate and "insist[ed] upon their right to a trial before an Article III Judge." Realizing that trial was to proceed, the defendants also filed their requested jury instructions and a "Standard Joint Pre-Trial Order" signed by their attorney and by the magistrate.

The trial was fruitless. Ford appeared pro se and explained in the first moments that he needed inmate Wallace's assistance and certain papers in Wallace's possession. The magistrate had the papers retrieved, but refused to allow Wallace to come to the courtroom. After the jury was selected and sworn, the magistrate asked Ford to make an opening statement. When Ford explained that he had planned for Wallace to deliver the statement, the magistrate told him that Wallace did not represent him and that if he had an opening statement he would have to make it himself. Ford declined. Defense counsel began her opening statement, but during a pause Ford interjected that he understood they would just pick a jury: "Your Honor, I'm not ready." Counsel concluded her statement, and the magistrate again asked Ford if he had a statement. Ford said he did, and repeated his request that Wallace be allowed to argue his case. The magistrate explained that Wallace was not an attorney and could not appear: "You filed this case yourself and you are required to proceed pro se and represent yourself." Ford repeated his request again: "I have an opening statement for the jury. The man out there [Wallace] already has it written out on a pad ... [H]e's out there, if [you would] just let him come in." When the request was again denied, Ford called Wallace into the courtroom as a witness. Wallace took the stand, but the magistrate refused to allow Wallace to ask Ford questions. Ford then gave up; he was sent back to his cell, and the magistrate informed all that he would recommend that the cases be dismissed for failure to prosecute.

Several days after trial, on August 5, Ford moved to "terminate" trial proceedings before the magistrate. He requested that "trial proceed" before a district judge, noting that he had not consented to trial before a magistrate under 28 U.S.C. § 636(c).

The magistrate filed his memorandum and recommendation on October 8, 1982. He rejected the parties' contentions that the reference was improper, finding statutory authority for the reference in 28 U.S.C. § 636(b)(1)(B) and (b)(3) and concluding that his participation was consistent both with the Due Process Clause and with Article III. Reaching the merits, the magistrate recommended that the case be dismissed, either as frivolous or for want of prosecution. Ford objected to the magistrate's recommendation, arguing among other things that the magistrate was without authority to preside over his trial. The district court adopted the recommendation in major part. Specifically, it upheld the magistrate's authority to proceed:

> The Magistrate's authority to conduct a hearing and make a recommendation in a prisoner case is entirely independent of the parties' consent. *Compare* 28 U.S.C. § 636(b)(1)(B) *with* 28 U.S.C. § 636(b)(2) *and* 28 U.S.C. § 636(c). *See Coleman v. Hutto,* 500 F.Supp. 586, 588 (E.D.Va. 1980).
>
> Plaintiff does not lose his right to trial before an Article III judge when the evidentiary hearing is held by the Magistrate because the Magistrate's recom-

mendation is not binding. Rather, the Court "may accept, reject, or modify, in whole or in part, the findings and recommendations" of the Magistrate. 28 U.S.C. § 636(b)(1). Additionally, when an objection is filed, as is the case here, the Court is required to make a de novo determination. *Id.*

The district court then dismissed Ford's action for failure to prosecute.

The magistrate and the district court are alone in considering this reference proper. Both Ford and the defendants, the latter represented by the Attorney General of Texas, take the position that 28 U.S.C. § 636 does not authorize reference of civil actions to magistrates for jury trial on the merits without consent of the parties. Invited to intervene, the United States also considers such a reference beyond the district court's statutory authority.

## II

### Reference Beyond the Statute

■ Our conclusion that this reference was beyond the district court's statutory authority springs from the interaction of three provisions of the Magistrates Act, 28 U.S.C. § 636. First, section 636(b)(1), added in 1976, allows a district court to refer to a magistrate *without* consent of the parties: (1) nondispositive motions, which the magistrate may "hear and determine" subject only to district court review for clear error, § 636(b)(1)(A); or (2) dispositive motions or "prisoner petitions challenging conditions of confinement," of which the magistrate may recommend disposition subject to the parties' right to object and the district court's review de novo. § 636(b)(1)(B). Second, subsection (b)(3) authorizes assignment to magistrates of "such additional duties as are not inconsistent with the Constitution and laws of the United States." Finally, the 1979 provisions in subsection 636(c) allow reference of "jury or nonjury" civil cases for full trial and entry of judgment if the parties voluntarily consent.

The magistrate found authority for this reference in the only two possible statutory sources: first, he concluded this was a reference of a "prisoner petition" under 636(b)(1)(B); second, he construed it to refer "additional duties" under 636(b)(3). The district court apparently relied on only the former ground.

### A

### The Question on Appeal

Ford neither constructively consented to this reference nor waived his right to challenge it on appeal. The defendants objected to the reference on statutory and constitutional grounds several days before trial. The magistrate was therefore aware before proceeding to trial that his authority was questioned. Ford filed a formal objection ten days after trial and long before the magistrate issued his recommendation. Thus, the question whether this reference was authorized by statute was raised and decided in the district court.

We have twice found constructive consent to proceed before a magistrate when the party objecting to the reference objected for the first time on appeal. *See Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352 (5th Cir.1980); *Cruz v. Hauck,* 515 F.2d 322 (5th Cir.1975). Specifically, we stated in *Cruz* that

> a party objecting to a reference should do so prior to or at the time of the reference. If this is infeasible, the objection should be made to the judge at the earliest possible opportunity. Such procedure permits the proper and efficient administration of the judicial process. Otherwise, a party disappointed with a master's report would be able to obtain "a second bite at the apple" by withholding his objection to the reference until after the report.

515 F.2d at 331 (citation omitted).

■ Ford asserted his objection in the district court and in a manner that gave that court an adequate opportunity to consider the matter. Although *Cruz*'s concern that objectors not get a "second bite" is

implicated here in view of the magistrate's statement at the close of trial that he intended to recommend dismissal, we cannot infer that this pro se plaintiff consented to the reference simply because he expressed his objection after the abortive trial. For similar reasons, we also conclude that Ford raised the issue adequately in the district court to preserve his objection on appeal. He voiced his objection long before the magistrate filed his report, and both the magistrate and the district court fully considered the question. The case therefore squarely presents the question whether civil rights complaints filed by prison inmates may routinely be referred to a magistrate for the trial of contested issues before a jury.

### B
### "Prisoner Petitions"

The Magistrates Act authorizes reference to magistrates "of prisoner petitions challenging conditions of confinement." 28 U.S.C. § 636(b)(1)(B). When so designated, the magistrate may "conduct hearings, including evidentiary hearings," and must then "submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, ... of [the prisoner petition]." *Id.* The district judge is then to make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1).

The United States District Court for the Southern District of Texas, from which this case arises, has promulgated two relevant "general orders" concerning the role of magistrates under the Act. First, General Order 80-5 simply restates the provisions of 636(b)(1) just outlined. Second, General Order 82-4 authorizes a magistrate to conduct jury trials in prisoner civil rights cases and to submit the jury's verdict in his report to the district judge. According to the order,

> The ultimate adjudication of each case shall remain with the district judge to whom the entire case has been assigned.

As to any matters to which a specific objection has been made, the district judge shall make a de novo determination in accordance with 28 U.S.C. § 636(b)(1) and Rule 50, FRCP, as appropriate.

Acknowledging that Congress' use of the words "petition" and "evidentiary hearing" suggested its intention to allow reference only of nonjury matters, the magistrate in this case concluded that (b)(1)(B) authorized such references even for jury trials. Because few prisoner civil rights actions can be classified as clearly jury or nonjury, reasoned the magistrate, the statute's purpose would be ill-served were it construed to authorize reference only of nonjury matters. Adopting the magistrate's memorandum in part, the district court added that the reference would not interfere with the parties' right to trial before an Article III judge because the district court "may accept, reject, or modify, in whole or in part, the findings and recommendations" of the magistrate. 1 Record 13, 14 (quoting 28 U.S.C. § 636(b)(1)).

The Magistrates Act has been structured in two major parts for some years, and that structure leads us to conclude that it cannot support this reference. Section 636(b) in its current form dates from 1976. Two years before, the Supreme Court had interpreted a former version of 636(b) to allow magistrates to make only a preliminary review of federal habeas corpus petitions, but not to authorize magistrates to hold evidentiary hearings in such cases. *Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). Congress responded specifically to *Wingo* when it included "prisoner petitions challenging conditions of confinement" among those matters that could be referred to a magistrate under its 1976 version of 636(b). *See* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6171. The House Report indicates that Congress also sought to allow reference of civil rights actions brought under 42 U.S.C.

§ 1983 by prisoners challenging the conditions of their confinement.[2] *Id.*

Congress relied on a simple notion to protect 636(b) nonconsensual references from constitutional infirmity. It provided that the ultimate decisionmaker after such a reference would remain the district judge. Thus, a magistrate's decision on a nondispositive "pretrial matter" was reviewable by the district court for mistake of law or clear error of fact, 28 U.S.C. § 636(b)(1)(A), and a magistrate's decision on dispositive matters—including prisoner petitions—was to be expressed only in the form of findings and a recommendation, *id.* § 636(b)(1)(B), which the district judge was empowered to "accept, reject, or modify, in whole or in part ...." *Id.* § 636(b)(1). The district judge, in short, retained substantial control over the ultimate disposition of matters referred to a magistrate under 636(b) without the parties' consent. *See United States v. Raddatz,* 447 U.S. 667, 673–77, 681–84, 100 S.Ct. 2406, 2411–13, 2415–16, 65 L.Ed.2d 424 (1980) (requirement that district judge remain ultimate decisionmaker was central in Congress' effort to draft 636(b) without Article III infirmity).

In contrast, Congress relied on an entirely different notion several years later when it authorized reference of civil actions to magistrates for trial. Section 636(c) was added to the statute in 1979 to create a mechanism by which district courts might refer cases to magistrates for full trial and entry of final judgment, but only upon consent of the parties. The parties' consent to such a reference is crucial to its validity under 636(c).[3] The language authorizing the reference expressly requires the consent of the parties, 28 U.S.C. § 636(c)(1), and Congress pursued that theme by expressly forbidding the district judge or magistrate from "attempt[ing] to persuade or induce any party to consent to reference of any civil matter to a magistrate." *Id.* § 636(c)(2). Indeed, the statute also provides that "[r]ules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent." *Id.*[4] The legislative history behind 636(c) reveals Congress' understanding that its provision for consensual references would for the first time authorize a magistrate to conduct jury trials:

> Magistrates presently have no explicit authorization to finally decide civil cases. The bill would explicitly permit such jurisdiction and thus codify and replace the experimental practice now being carried on in a number of districts under 28 U.S.C. 636(b)(2) and (b)(3). *Additionally, the magistrate would be allowed to conduct jury trials when requested.* The bill makes clear that the voluntary consent of the parties is required before

---

**2.** Indeed, the term "conditions of confinement" was fairly current in 1976, for only three years earlier the Supreme Court used it to distinguish those cases appropriately brought under section 1983 from those petitions challenging the "fact or duration" of confinement that were within the federal habeas corpus statute and therefore subject to the requirement that state remedies be exhausted. *See Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**3.** While our holding is entirely one of statutory construction, we note that the constitutionality of even a consensual reference under 636(c) is not entirely free from doubt. *See Goldstein v. Kelleher,* 728 F.2d 32 (1st Cir.1984) (upholding reference); *Collins v. Foreman,* 729 F.2d 108 (2d Cir.1984) (upholding reference), *petition for cert. filed,* 52 U.S.L.W. 3777 (U.S. April 2, 1984) (No. 83–1616); *Wharton-Thomas v. United States,* 721 F.2d 922 (3d Cir.1983) (upholding

reference); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 712 F.2d 1305 (9th Cir.1983) (reference unconstitutional), *rev'd,* 725 F.2d 537 (9th Cir.1984) (en banc) (upholding reference). "For essentially the reasons stated by our sister circuits," we recently upheld the constitutionality of a consensual reference under 636(c). *Puryear v. Ede's Ltd.,* 731 F.2d 1153 (5th Cir.1984).

**4.** The Southern District of Texas, from which this case arises, has responded to this mandate in Article III of its General Order 80–5, dated June 16, 1980. That order establishes procedures by which the parties are to express their consent to proceed before a magistrate; notably, the Southern District's order prohibits the contents of a consent form from being "made known to any district judge or magistrate" unless all parties have consented to the reference.

any civil action may be referred to a magistrate.[5]

S.Rep. No. 74, 96th Cong., 1st Sess. 4, *reprinted in* 1979 U.S.Code Cong. & Ad. News 1469, 1478 (emphasis supplied).

The interaction of these two subsections persuades us that subsection (b) does not authorize reference of prisoner cases to a magistrate for jury trial. Subsection (b) speaks not of consent but of the district court's role in overseeing the magistrate's handling of the proceedings and in reviewing the magistrate's findings and recommendations. Congress sought thereby to assure "that ... the ultimate adjudicatory power over dispositive motions, habeas corpus, prisoner petitions and the like is exercised by a judge of the court after receiving assistance from and the recommendation of the magistrate." H.R.Rep. No. 1609, *supra* at 11, *reprinted in* 1976 U.S. Code Cong. & Ad.News 6162, 6171. That safeguarding role of the district court may remain even when the "evidentiary hearing" conducted by the magistrate expands to a full nonjury trial, covering all issues presented; the district judge would still remain free to look behind the magistrate's recommendation in order to revisit the record de novo. *Cf. Hill v. Jenkins,* 603 F.2d 1256, 1258 (7th Cir.1979) (even full nonjury trial requires consent). But a jury trial before the magistrate involves fact-finding intrinsically incapable of review de novo, and fits the structure of the Magistrates Act only in subsection (c), trial by consent. Section 636(b)'s provision for reference of "conditions of confinement" petitions must be limited to authorize designation of magistrates to hold evidentiary hearings only for the determination of nonjury issues.

The cases are few and their reasoning uncertain in support of this reference under (b)(1)(B). Only a single court has held squarely that nonconsensual references of prisoner cases for full jury trial is authorized by (b)(1)(B).[6] In *Coleman v. Hutto,* 500 F.Supp. 586 (E.D.Va.1980), the magistrate heard a jury trial and included the jury's verdict in his report. The district court followed *Muhich v. Allen,* 603 F.2d 1247 (7th Cir.1979), a consensual reference case, in upholding the reference under (b)(1)(B), and found adequate involvement of the district court in its review of the record de novo and in the possibility that the district court could retry the case before a new jury if necessary. *See* 500 F.Supp. at 591. We cannot agree that Congress intended to rely on so obviously problematic a safeguard as the district judges' power to review de novo those jury verdicts included in a magistrate's report.

▪ The reference employed here either effectively denies the right to trial by jury, or impermissibly abrogates the decisive role of the district judge, or both. We fail to see how a district court's review de novo of a jury's verdict could pass muster under the Seventh Amendment's mandate that "no fact tried by a jury, shall be otherwise examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. 7. We need not reach the Seventh Amendment question, however, for it is hard to imagine that Congress intended to rely on so uncertain a constitutional interpretation with nary a comment in the statute or its legislative history. We must therefore reject the well-intended construction given the Act in *Coleman* and conclude instead that subsec-

---

**5.** Congress has also authorized reference of misdemeanor cases for jury trial before a magistrate, but again it limited references for trial to cases in which the accused consents to proceed before a magistrate. *See* 18 U.S.C. § 3401.

**6.** *Orpiano v. Johnson,* 687 F.2d 44 (4th Cir.1982), upheld nonconsensual reference of a prison conditions case under (b)(1)(B), but the proceeding was nonjury and the Fourth Circuit relied heavily on the availability of de novo review in the district court. The only appellate

decision upholding reference of a jury case was under (b)(3)'s "additional duties" provision and involved a consensual reference. *Muhich v. Allen,* 603 F.2d 1247 (7th Cir.1979); *see Hill v. Jenkins,* 603 F.2d at 1256, 1258 (7th Cir.1979) (construing *Muhich* to require consent before reference for full "civil trial"). *See also Coolidge v. Schooner California,* 637 F.2d 1321 (9th Cir.1981) ((b)(3) allows reference for nonjury trial only with consent; follows *Muhich* ).

tion (b)(1)(B) does not authorize district courts to refer prisoner civil rights actions to magistrates for full jury trial.

## C

### "Additional Duties"

The Magistrates Act also provides generally that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The magistrate in this case relied in part on this catch-all provision as a source of authority for the reference. *See* General Order 82–4 (S.D.Tex. March 29, 1982) (relying in part on (b)(3)). We are unsure whether the district court relied on this "additional duties" provision or only on the provision for reference of prisoner petitions; we reach the question in the interest of completeness because the defendants may rely in this court upon any ground to support the lower court's judgment.

*Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352 (5th Cir.1980), upheld consensual reference of a civil case for trial before a magistrate under the "additional duties" provision. *Calderon* involved a nonjury trial under Title VII. The magistrate heard testimony from witnesses and argument of counsel and submitted proposed findings of fact and conclusions of law to the district court. The district court then adopted the magistrate's findings without having undertaken a de novo review of the record. Passing the question whether consent is an absolute requirement, *id.* at 354, we approved references for trial under (b)(3) so long as "the magistrate's findings are subject to de novo determination by the district court." [7] *Id.* at 355 n. 3. *See Hill v. Duriron Co.,* 656 F.2d 1208, 1214 (6th Cir.1981).

After *Calderon,* a reference for jury trial fails under (b)(3) for precisely the reason it failed under (b)(1)(B): the involvement of a jury and the special respect to which a jury verdict is entitled precludes the "de novo review" by a district judge that the Magistrates Act obviously requires and that we deemed critical in *Calderon.* Although the district judge need not conduct a *"de novo* examination of witnesses," *Calderon,* 630 F.2d at 356 (citing *United States v. Raddatz,* 447 U.S. 667, 681 n. 7, 100 S.Ct. 2406, 2415 n. 7, 65 L.Ed.2d 424 (1980)), he must be able—when required to do so by a party's objection—to reassess de novo the credibility of witnesses by "at least" reading a transcript. *Id.* at 356. Unlike the district court, we cannot imagine how that necessary review might be accomplished by a district judge after the case has been tried to a jury before the magistrate. *See Muhich v. Allen,* 603 F.2d 1247, 1255 (7th Cir.1979) (Swygert, J., dissenting).

Our holding today effectively decides part of the question left open in *Calderon,* 630 F.2d at 355 n. 3: section 636(b)(3) cannot support reference of a civil action to a magistrate for jury trial, and to the extent that a case is to be tried to a jury it can be referred to a magistrate only upon consent of the parties under 636(c). We recognize the legitimate concerns ably expressed in this case by the magistrate. Those districts in which magistrates have been presiding over jury trials of prisoner civil rights actions may find inconvenience in the statutory disability of their magistrates to continue to take jury cases without consent of the parties. Because they reflect neither of the safeguards contemplated by the Magistrates Act—close district court review or consent of the parties—references for jury trial before a magistrate cannot be justified on grounds of expedience alone.

Nothing in this opinion should cast any doubt on the validity of references under the Magistrates Act, properly limited in accordance with the opinion, simply because the issues referred to the magistrate

---

**7.** We remanded *Calderon* to the district court for further proceedings and with directions that the lower court "review the transcript of the proceedings before the magistrate and make a 'de novo determination' of the magistrate's findings." *Id.* at 356.

arise in a case in which a jury trial has been requested.

This reference was invalid because it authorized jury trial before a magistrate without the parties' consent. The magistrate was therefore without authority to preside over the trial. We VACATE the order of dismissal and REMAND for further proceedings consistent with this opinion.