Dickie Freling WIMMER, Appellant,

v.

County Commission President Woodrow COOK; Chief Sheriff Harold L. Hatfield; Chief Deputy Sheriff Jimmy Craft; Jailer Dorthe Bolt; Jailer Nancy Rust; Jailer Brenda Perdue, Appellees.

No. 84–6430.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1985.

Decided Sept. 19, 1985.

Steven H. Goldblatt, Washington, D.C. (Susan L. Siegal, Washington, D.C., Elizabeth Jordan Gianturco, Jon Edwards, Appellate Litigation Clinical Program, Georgetown University, Washington, D.C., on brief), for appellant.

Harlen Ray Tiller, Asst. Prosecuting Atty., Oceana W. Va., (Paul R. Goode, Jr., Prosecuting Atty., Mullens, W. Va., on brief), for appellee.

Before RUSSELL, SPROUSE and WILKINSON, Circuit Judges.

DONALD RUSSELL, Circuit Judge.

This action involves the construction of the Magistrate Act of 1968, as revised in 1976 and 1979. The issue arises in connection with a *pro se* suit filed by the plaintiff, a pre-trial detainee, challenging under 42 U.S.C. § 1983, the conditions under which he was detained in the Wyoming (West Virginia) jail as violative of his constitutional rights. The defendants are the president of the Wyoming County Commission (Cook), with general or supervisory responsibility for the jail, and several members of the County Sheriff's department who have the direct responsibility for the operation of the jail. The plaintiff sought actual and exemplary damages as well as declaratory judgment and injunctive relief in connection with what he alleged to be unsanitary and unhealthy conditions in the jail. In his

complaint he included a request for "[t]rial by jury on all triable issues contained herein."

Following joinder of issues and after some discovery, the district judge entered "pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and the Magistrate's Local Rules of Practice and Procedure,"[1] an order referring the cause to the United States Magistrate "to review and consider the allegations thereof ... [and] if the same be indicated, ... [to] conduct any required hearings, including evidentiary hearings on factual issues raised" and "to submit his proposed findings of fact and recommendations for the disposition thereof to this court." This order of reference by the district judge was entered *sua sponte*, without notice to or consent by the parties.

The magistrate, acting under this reference, recommended, after reviewing the complaint and certain affidavits in the proceedings, that four of the plaintiff's fourteen causes of action be dismissed. Over the plaintiff's objection, the district judge sustained the recommendation of the magistrate and dismissed the four causes of action.

The magistrate, without obtaining the consent of the plaintiff, impaneled a jury for the trial of the plaintiff's remaining ten claims. Prior to such impaneling, the plaintiff, pleading his inability as one proceeding *pro se* to "adequately represent himself," sought the appointment of counsel to represent him.[2] The record indicates no action by the court on such request. At the close of plaintiff's case, the magistrate granted the motion of the defendant president of the County Commission (Cook) for a directed verdict but denied a like motion on behalf of the other defendants. The cause was thereafter submitted to a jury, under instructions, and the jury returned a general verdict in favor of the defendants. The magistrate thereupon submitted to the district court on April 13, 1984, his "Report-Recommendation." In this report he re-

viewed the proceedings before trial, set forth a short account of the evidence at the jury trial, observed that he had given "an appropriate charge which encompassed jury instructions offered by the plaintiff," and concluded by recommending that his directed verdict in favor of the defendant Cook "be adopted by the court" and "that judgment in favor of the remaining defendants be entered in accordance with the jury verdict in favor of said defendants." To this "Report-Recommendation" the plaintiff filed general objections within ten days after the filing of such "Report-Recommendation." At the same time he petitioned the district court for a transcript of the trial before the magistrate.

On May 4, 1984, the district judge, "[a]fter a *de novo* review of the record in this case, including plaintiff's complaint, the Report-Recommendation of the United States Magistrate, together with plaintiff's objections to the Report-Recommendation," approved the "Report-Recommendation of the United States Magistrate," found the plaintiff's objections "without merit," and ordered the action "dismissed and stricken from the docket of this court." Approximately two weeks later, the plaintiff renewed his motion for a transcript of the trial and for the appointment of counsel to assist him on appeal. The district court granted the motion for a transcript and ordered the preparation of such transcript but denied the motion for appointment of counsel. This appeal followed.

On appeal the plaintiff raises two issues: The first addresses the authority of the magistrate under section 636(b)(1)(B) to conduct a non-consensual jury trial of plaintiff's cause of action, and the second whether the district judge was clearly erroneous in denying plaintiff's request for the appointment of counsel. We turn first to the challenge to the magistrate's power under section 636(b)(1)(B).

The power and authority of United States Magistrates under the Magistrate

---

1. Practice under the Magistrate Act is covered in Fed.R.Civ.P. 72.

2. He had already been granted the right to proceed *in forma pauperis.*

Act, 28 U.S.C. § 636, have been developed in three legislative steps, beginning with the original enactment of the statute in 1968, followed by its extension of authority in the amendments of 1976 and concluding with the amendments included in the Magistrate Act of 1979. Each step in this growth in the jurisdiction of the magistrate was prompted by an expressed Congressional desire to reduce the burden on the federal courts caused by the tremendous increase in the caseload in those courts. However, the Congress was conscious at all times of the need to restrict any enlargement of the magistrate's jurisdiction or authority so as not to violate the purposes and intent of Article III, with its strict identification of those who may be authorized to exercise final judicial power. The Act is divided broadly into three subsections.[3] The first covers generally the duties performed previously by United States Commissioners together with the authority to try certain minor criminal offenses, as provided in 18 U.S.C. § 3401.[4] It has no relationship to this case and we do not for that reason further discuss it. The challenge of the plaintiff centers entirely on the second (b) and third (c) subsections of the statute.

As originally enacted in 1968, subsection (b) of the Act authorized the assignment to a magistrate of "such additional duties as are not inconsistent with the Constitution and laws of the United States," including but not restricted to "service as a special master, ... assistance ... in the conduct of pretrial or discovery proceedings in civil and criminal actions, and preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendation to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing." *See* Federal Magistrate Act, Pub.L. No. 90–578, 1968 U.S.Code Cong & Ad.News (82 Stat. 1107) p. 1280, 1286–87 (current version at 28 U.S.C. § 636 (1983)).

This section, though broad in language, came under attack in a habeas proceeding in *Wedding v. Wingo*, 483 F.2d 1131 (6th Cir.1973), it being the position of the petitioner in that case that a magistrate was not empowered to hold an evidentiary hearing in a habeas proceeding. The circuit court in its decision in that case noted that the Judicial Conference had filed with the Senate Committee while that Committee was considering the enactment of the Act a report stating that, as originally drafted the proposed section, was "so general as to make [the] subsection vulnerable to possible constitutional attack," and observed that, in response to such warning, (b) had been amended by the Congress "and the phrase, 'preliminary consideration of applications for post-trial relief' in the Bill was narrowed to 'preliminary review' of the applications and the power and authority of the Magistrate was restricted to 'submission of a report and recommendations to facilitate the decision of the district judge' only as to 'whether there should be a hearing.'" 483 F.2d at 1136. The circuit court held that under its construction of this language of the subsection, the power to conduct an evidentiary hearing in a habeas proceeding was not conferred on a magistrate. That decision of the circuit court was affirmed by the Supreme Court. *Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). In its decision, however, the Supreme Court added this footnote: "We indicate no views as to the validity of investing such authority in a magistrate or other officer 'outside the pale of Article III of the Constitution.'" 418 U.S.

---

**3.** For an excellent explanation of the Magistrate Act, see 12 Wright & Miller, *Federal Practice & Procedure* § 3076.1, *et seq.*

    The history of the Act is also detailed in McCabe, *The Federal Magistrate Act of 1979*, 16 Harv.J.Legis. 343 (1979).

**4.** *See* 1976 U.S.Code Cong. & Adm.News p. 6162 at 6168:

"No changes are made [in the 1976 amendments] in section 636(a) of Title 28 under which magistrate exercised the powers with respect to issuance of arrest warrants, search warrants, setting bail, preliminary hearings, and the trial of minor and petty offenses under section 3401 of title 18, United States Code."

at 467 n. 4, 94 S.Ct. at 2847 n. 4 (quoting *Wedding v. Wingo,* 413 F.2d at 1133 n. 1).

In early 1976, some two years after *Wingo,* the Supreme Court sustained in *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), the authority of a magistrate under subsection (b) to review an award of Social Security benefits, subject however, to this important qualification that "[t]he magistrate may do no more than propose a recommendation, and neither § 636(b) nor the General Order gives such recommendation presumptive weight.... The authority—and the responsibility—to make an informed, final determination, we emphasize, remains with the judge." 423 U.S. at 270–71, 96 S.Ct. at 554.

■ Finding guidance in *Wingo* and *Mathews* for relieving further the burden on federal courts without violating the intent of Article III, the Congress in 1976 clarified the powers of the magistrate by enlarging his authority under subsection (b) to hear and determine certain pre-trial motions and, of special relevancy here, "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, ... of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."[5] 28 U.S.C. § 636(b)(1)(B) (1983). Any party in a proceeding in which the magistrate under this revised section has held an evidentiary hearing and has filed findings of

fact and recommendations for disposition could file timely objections to the findings or recommendations and the district judge was to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." This amendment received the approval of the Supreme Court in *United States v. Raddatz,* 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980):

> Thus, although the statute permits the district court to give to the magistrate's proposed findings of fact and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," *Mathews v. Weber, supra* [423 U.S.] at 275 [96 S.Ct. at 556], that delegation does not violate Article III so long as the ultimate decision is made by the district court.[6]

■ Between 1976 and 1979, a number of courts, however, had begun to delegate to magistrates but always with the consent of the parties the authority to conduct hearings, to hold trials with or without juries, and to make final determinations. *Marvel v. United States,* 719 F.2d 1507, 1511–12 (10th Cir.1983) (decided under the 1976 amendments); *Coolidge v. Schooner California,* 637 F.2d 1321, 1325 (9th Cir.) (1976 amendments), *cert. denied,* 451 U.S. 1020, 101 S.Ct. 3011, 69 L.Ed.2d 392 (1981); *Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352, 355 n. 3 (5th Cir.1980); *Muhich v. Allen,* 603 F.2d 1247, 1251 (7th Cir.1979); *DeCosta v. Columbia Broadcasting System, Inc.,* 520 F.2d 499, 507–08

---

5. The purpose and scope of these amendments were described in the Senate Report on the 1979 amendments (S.Rep. No. 74, 96th Cong., 2d Sess. 3–4, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1469, 1472) thus:

> The 1976 Jurisdictional Amendments to the Federal Magistrates Act (Public Law 94–577) was enacted by the 94th Congress in order to restate the original congressional intention with respect to the use of magistrates, in light of several adverse decisions that had been rendered, *Wingo v. Wedding,* 418 U.S. 461 [94 S.Ct. 2842, 41 L.Ed.2d 879] (1974); *Ingram v. Richardson,* 471 F.2d 1268 (6th Cir.1972); *T.P.O., Inc. v. McMillan,* 460 F.2d 348 (7th Cir.1972). That law made clear the authority

of magistrates to conduct evidentiary hearings in prisoner cases as well as their power to screen the records initially, to hear and determine nondispositive pretrial matters, to recommend the dispositive pretrial matters, to recommend the disposition of dispositive pretrial motions, and to serve as special masters in any civil case, upon the consent of the parties.

6. The rationale of Article III is that the judicial power should be entrusted only to those judges whose impartiality and freedom from coercion are ensured by life tenure, subject only to impeachment, and by irreducible compensation.

(1st Cir.1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). Congress had had such practice called approvingly to its attention. *See* Hearings on Diversity of Citizenship Jurisdiction and Magistrates Reform Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 95th Cong., 1st Sess. 499 (1977). With that background, the Congress in 1979 added subsection (c) to the Magistrate Act. In this subsection, the Congress in effect gave statutory authority for much of the procedure followed in *De-Costa* and *Muhich.* It provided that "[u]pon the consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case when specially designated to exercise such jurisdiction by the district court or courts he serves." Federal Magistrate Act of 1979, Pub.L. No. 96–82 § 2(4), 93 Stat. 643, 643 (codified at 28 U.S.C. § 636(c) (1983)). This new subsection set forth precisely how consent of the parties should be secured to this new authority for the magistrate. First, the district judge was to determine whether such a delegation was appropriate in the case and, if he so determined, then the clerk was to advise the parties and to inquire whether they consented or not. *See In re Morrissey,* 717 F.2d 100, 102 (3d Cir.1983). Whatever may have been the earlier practice followed in *Marvel, Muhich* and *DeCosta,* Congress, by specifically legislating on the manner in which magistrates might conduct jury trials determinative of the cause, established the exclusive method for the exercise of such jurisdiction and power by a federal magistrate.[7]

▮ This legislative history of the Act with its focus alike upon the constraints of Article III and upon the burdens of the federal judicial system, demonstrates the care exercised by the Congress to ensure that, in enlarging the authority of the magistrate, it did not violate the limits placed on final judicial power by Article III of the Constitution. Thus while under subsection (b), the magistrate may conduct the evidentiary hearing in the case, he lacks judicial authority to make on his own a final determination or, by impaneling a jury, to give to a jury the power to make the final decision on the facts of the controversy; any individual findings of fact or recommendations for disposition by him, if objected to, are subject to final *de novo* determination on such objections by a district judge, thus satisfying the requirements of Article III.[8] *United States v. Raddatz,* 447 U.S. 667, 683–84, 100 S.Ct. 2406, 2416–17, 65 L.Ed.2d 424 (1980). The only in-

---

**7.** The constitutionality of subsection (c) was raised after the decision in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) by the court in *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix,* 712 F.2d 1305 (9th Cir. 1983), but that decision was reconsidered and the subsection found constitutional on rehearing en banc (9th Cir.1984). Nine other circuits, including our own, have found the subsection constitutional. *Gairola v. Commonwealth of Virginia,* 753 F.2d 1281, 1284–85 (4th Cir.1985), in which all the circuit cases are cited.

**8.** Failure to object may be deemed a waiver. *See Camby v. Davis,* 718 F.2d 198, 200 n. 2 (4th Cir.1983):

All of the circuits except one, which have considered the question of waiver have generally found that failure to file objections to a magistrate's report precludes consideration on appeal of the substance of the report.

Our court has held that under the 1976 amendments authorizing a magistrate to perform "such additional duties as are not inconsistent with the Constitution and laws of the United States," 28 U.S.C. § 636(b)(3), a magistrate constitutionally may conduct consensual trials of civil cases on the merits and that the failure to object to a referral to a magistrate for trial on the merits before appeal waives the objection and constitutes consent. *Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352, 354–55 (5th Cir.1980). Although Wimmer failed to object to the referral in this case, we hardly think that a prisoner proceeding *pro se* and *in forma pauperis* can be expected to understand the intricacies of a statute that has engendered as much litigation as the Federal Magistrates Act. *cf. Ford v. Estelle,* 740 F.2d 374, 378 (5th Cir. 1984).

stance when the magistrate may make a final determination on the merits is provided in the language of subsection (c), which was added by the amendments of 1979. The subsection requires, as we have already observed, first, a designation of the district judge of such power and, second, the consent of the parties freely given without any persuasion or inducement on the part of either the district judge or the magistrate. Without satisfying these requirements of (c) there can be no use of a jury to effect a final determination in an action referred to a magistrate by the district judge. But when the reference to the magistrate is under (b) there can be no jury trial and no final disposition either as a result of a jury verdict in a trial before the magistrate or by the magistrate himself; the constitutional provisions of Article III of the Constitution foreclose such power as well as the terms of the statute itself. *See Ford v. Estelle*, 740 F.2d 374, 379–80 (5th Cir.1984).

■ The delegation in this case was declared expressly to be under section (b). The authority to refer the action under that section is not in issue. It is accepted that this action by a prisoner "challenging conditions of confinement" falls clearly within that class of proceedings which may be referred under (b).[9] Further, the plaintiff agrees that the district judge was empowered to refer the matter to the magistrate on his own motion without the consent of either party. *Orpiano v. Johnson*, 687 F.2d 44, 46 (4th Cir.1982). The plaintiff takes exception, however, to the procedures followed in this case from that point on. He objects to the magistrate's unilateral act of impaneling a jury and committing to such jury the rendition of a general verdict resolving all factual issues in the case. He contends correctly that there was no language in (b) authorizing a magistrate to conduct a jury trial, *see Ford v. Estelle*,

740 F.2d 374, 380 (5th Cir.1984); any power in a magistrate to conduct a jury trial, in his view, exists solely under the authority granted under section (c). He asserts, without any contradiction, that there is no evidence whatsoever in this case of any attempt at compliance with that section or of any intention on the part of the district judge to make any designation thereunder. Assuming, then, that the magistrate's jurisdiction in this case was limited to the authority granted him under subsection (b), the plaintiff argues that he had a right to specific findings of fact by the magistrate, findings supporting the magistrate's recommendations to which he could object. In this case the magistrate, in plaintiff's opinion, abandoned his obligation and conferred the fact-finding prerogative in this case on a jury, under instructions to render a general factual verdict, a verdict which, by its very nature, was intrinsically not susceptible of *de novo* review and determination. We find the argument compelling.

■ There was no disagreement on the legal issues involved in this case. The only contest was factual. The facts were admittedly in sharp dispute. The pre-trial order of the magistrate makes this point clear. By his order denying the defendant's motion for a directed verdict on the factual record, the magistrate recognized that the factual issue was real and required a judicial determination. The magistrate, however, made no factual findings, though (b) expressly commanded that he (not a jury) make findings of fact which, on timely objection to any of such findings by either party, required a *de novo* review of such objection, followed by a final determination by the district judge. He submitted the resolution of the factual issues to a nonconsensual jury under a form of verdict which included no findings of the facts of the case other than the ultimate fact that "the conditions in the Wyoming County Jail

**9.** For a definition of the phrase "challenging conditions of confinement" see *Hill v. Jenkins*, 603 F.2d 1256, 1260 (7th Cir.1979) (Swygert, J. concurring):

that phrase encompasses ongoing prison practices and regulations with regard to matters

such as placement in maximum security, deadlocks, unhealthy living conditions, unnecessary exposure to violence-prone inmates, overcrowded physical environments, and cruel or unusual punishment by prison authorities.

did not violate the constitutional rights of the plaintiff," in short a general verdict. That action was erroneous, first, in its assumption that under a (b) reference, the magistrate had authority to conduct a jury trial, *see Ford v. Estelle* at 380, and second, his recommendation that the general verdict of the jury be deemed the findings and recommendations, which denied the plaintiff any opportunity intelligently to object. Such a finding is insufficient under (b), *see United States v. Shami,* 754 F.2d 670, 672 (6th Cir.1985), *cf. EEOC v. Keco Industries, Inc.,* 748 F.2d 1097, 1102 (6th Cir. 1984). The only finding of fact or "recommendation" by the magistrate was "that judgment in favor of the remaining defendants be entered in accordance with the jury verdict in favor of the defendants." That action of the magistrate—his failure to make any findings and his recommending no action beyond that the jury verdict be accepted—denied effectively to the plaintiff, as he argues, the right to object to the specific findings of fact on which the final determination against him rested.[10] Beyond that, it denied the district judge any opportunity to review the findings made by the jury or to make a *de novo* review of the findings which were encompassed in the general verdict. It violated both the letter and the spirit of section (b) of the Act.

We are not unmindful that in two recent district court decisions in this circuit, it was held—particularly if the prisoner had demanded initially a jury trial—that the magistrate under a (b)(1)(B) reference, had the authority to conduct a trial [of a prisoner's action challenging prison conditions] before a jury and submit the jury's findings as part of his report and recommendation. *Lugenbeel v. Schutte,* 600 F.Supp. 698, 701 (D.Md.1985); *Coleman v. Hutto,* 500 F.Supp. 586, 589 (E.D.Va.1980). In *Lugenbeel,* which is representative of the reasoning of these cases, the court assumed that, if the magistrate chose to use a jury, the district judge would be able to "review *de novo* all legal rulings of the magistrate and to ensure that every stage of the trial was properly conducted." 600 F.Supp. at 700. To this extent, the court said "the [district] judge does retain complete control of the disposition of the case." *Id.* But the court declared that, in such a trial under reference to the magistrate under (b), "the district judge cannot review *de novo* the jury's findings of fact," *Id.* Such a ruling, however, flies in the face of the precise language of (b) which gives the plaintiff in a prisoner case the right, upon objection, to a *de novo* determination on the findings made by the magistrate. Moreover, under the reasoning of *Lugenbeel,* the magistrate, after a jury trial, would, in effect, be disposing of the case and awarding judgment, at least on all questions of fact. Yet, prior to the addition of subsection (c) the magistrate had no more authority to conduct a trial with a jury, which by its verdict could resolve finally factual issues, than he had to resolve finally such factual issues in his report to the district court. If a magistrate, under a reference under (b) can impanel a jury to resolve all factual issues by a general verdict which, by its very nature is intrinsically incapable of review *de novo,* the right of ultimate determination by the district court on *de novo* review is made an empty gesture and the jury verdict is as

---

**10.** A general verdict, at best, is an ultimate finding of fact. As such, it does not meet the statutory requirement of "findings of fact," which "must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court [or magistrate] reached its ultimate conclusion on each factual issue." 9 Wright & Miller, *Federal Practice & Procedure,* § 2579, at 710 (1971). The court in *Golf City Inc. v. Wilson Sporting Goods Co.,* 555 F.2d 426, 433 (5th Cir.1977) put the rule thus:

> We have concluded that the findings of the district court do not provide a sufficiently

definite predicate for proper appellate review. Many of the findings are couched in conclusory terms. Some were announced solely as ultimate findings without support which clearly reflected a choice between conflicting accounts of events or between alternate legal interpretations of those events. This court cannot be left to guess. The findings and conclusions we review must be expressed with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied. (Quoting *Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.,* 520 F.2d 1030, 1034 (5th Cir.1975)).

decisive as the jury verdict in a (c) designation would be.

■ It is the position of the defendants, however, that in his complaint the prisoner-plaintiff had requested a jury trial and that such request constituted a consent to a jury trial whether before the district court or before the magistrate under reference pursuant to section 636(b)(1)(B). This seems to have been in part the reason assigned by the court in *Lugenbeel* for its direction to the magistrate, acting under a (b) designation, to proceed with a jury trial in a case similar to the one under review after the magistrate had decided he had no authority to conduct a jury trial. But, assuming that a magistrate may conduct by consent a jury trial in a case referred to him on the factual issues under (c), such consent, must, as the Act unmistakenly declares, be voluntarily given only after notice to all parties of their right to consent or not. It follows, therefore, that, in our opinion, a request for a jury trial, included in the complaint when filed, cannot be deemed an implied consent to a jury trial before a magistrate under a designation made under section 636(b)(1)(B). To constitute consent for such a procedure there must be notice to the parties of the right to consent followed by voluntary consent to that procedure by the parties.

■ There is another defect in this proceeding, one which the defendants candidly admit. The district judge did not have before him a transcript of the testimony before the magistrate when he held his *de novo* review of the plaintiff's objections nor when he entered his order approving and adopting the magistrate's "findings" and "recommendations." Such failure is reversible error. *Orpiano v. Johnson*, 687 F.2d at 48 & n. 1; *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir.1981); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir.1981). In the latter case, the court said:

> The constitutional safeguards, as established by Congress and interpreted by the courts, are such that an appellate court must be satisfied that a district judge has exercised his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations.

The defendants, in conceding that the district court erred in not reviewing the actual testimony "herein," suggest that "for reasons of judicial economy," we review the transcript, make our own *de novo* review of the magistrate's findings and recommendations, and either adopt or reverse those findings and recommendations. In support of such procedure, they cite *United States v. Lewis*, 621 F.2d 1382, 1387 (5th Cir.1980). We are unwilling to adopt such a procedure, which would substitute fact finding at the appellate level for fact-finding at the trial level. The fact-finding responsibility has long been recognized as one for the trial court and sound practice suggests strict observance of this division of responsibility between trial and appellate courts except in the most exceptional circumstances. *See Anderson v. Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

It accordingly follows that the judgment and order of dismissal herein, including that of the defendant Cook, must be vacated and the cause must be remanded to the district court for proceedings consistent with the foregoing decision.

■ The plaintiff, also, appeals the denial of his request for appointment of counsel to assist in the presentation of his case. While we do not think appointment of counsel in *pro se* cases should be automatic but should be within the informed judgment of the district court, we are of the opinion that in view of the unusual proceedings to date in this case, the district judge should reconsider his denial of plaintiff's request for the appointment of counsel to assist the plaintiff in further proceedings herein.

REVERSED and REMANDED WITH INSTRUCTIONS.