944 F.2d 902
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Walter HART, Defendant-Appellant.
 No. 91-5276.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 15, 1991.
Decided Sept. 25, 1991.
As Amended Oct. 25, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CR-90-78-5)
 Mary Elizabeth Manton, Assistant Federal Public Defender, Raleigh, N.C., for appellant.
 Margaret Person Currin, United States Attorney, Jane H. Jolly, Assistant United States Attorney, Raleigh, N.C., Thomas M. Gannon, United States Department of Justice, Washington, D.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER and K.K. HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Walter Hart appeals his convictions of possession with intent to distribute 508 grams of cocaine and maintaining a dwelling for the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and § 856(a)(1). Hart maintains that the district court erred in denying his motion to suppress evidence seized during a consensual search of a trailer rented by him. The only issue on appeal is whether the police exceeded the scope of consent. Finding no error, we affirm.
 
 
 2
 Early in the morning of May 14, 1990, Detectives John Farmer and Billy Radford, Jr., of the Wilson County, North Carolina Sheriff's Department (as well as another agent from the North Carolina Alcohol Law Enforcement Board) went to Hart's residence with an arrest warrant for conspiracy to sell and deliver cocaine. After giving Hart his Miranda rights, the officers obtained Hart's written consent to search his home. A lengthy search uncovered no narcotics. The officers then began questioning Hart about a trailer which he rented several miles away from his home. Hart ultimately signed a separate consent form agreeing to a search of his trailer.
 
 
 3
 Hart accompanied the officers in their car to the trailer. However, shortly after leaving his residence, Hart asked the officers to stop the car. They pulled over to the side of the road, and, at Hart's request, got out of the car. Hart explained that he feared that the car was "bugged" and went on to tell the officers that they would find a small quantity ("a gram or two") of cocaine, as well as a "grinder," in the trailer, but nothing else. He said he feared his wife's finding out about the trailer, and he offered to cooperate with the police. Hart testified that the officers made no promises but said they could "probably" keep his wife from finding out. They all got back in the car and proceeded to the trailer. Radford and Farmer rejected Hart's request to go into the trailer by himself to retrieve the cocaine and grinder.
 
 
 4
 According to the officers' testimony, Hart continually expressed his concern for a quick search and urged them to hurry so as not to be seen by anyone in the neighborhood. Farmer testified that after they entered the trailer, he immediately proceeded to the back bedroom where he believed cocaine was located. He found a cooler containing 18 ounces of cocaine in the bedroom closet.* Both officers testified that at no time did Hart ever refuse entry into the trailer or ask the officers to leave or in any way attempt to withdraw his consent. Hart only stated "we need to get out as fast as we can" and "we have to hurry up, get in and get out." Hart contends that he believed there was an agreement reached during the discussion by the side of the road to limit the search to the cocaine and grinder that he mentioned to the officers. However, he does not claim that he ever asked the officers to stop the search or attempted to prevent their entry into the trailer. In addition, he does not dispute that he voluntarily consented to a search of the trailer in the first place.
 
 
 5
 Hart moved to suppress the evidence seized in the trailer on the ground that the officers exceeded the scope of his consent. A hearing was conducted before a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B); the magistrate judge concluded that Hart had not limited the scope of his written consent. The district court adopted the magistrate judge's findings and denied the motion. Hart was convicted by a jury on both drug counts. This appeal followed.
 
 
 6
 A search conducted pursuant to voluntary consent must be limited to the terms of its authorization. United States v. Blake, 888 F.2d 795, 798 (11th Cir.1989). Whether consent to search is voluntary and whether the search conformed to any limitations placed upon it are "to be determined by the totality of all the circumstances." United States v. Mendenhall, 446 U.S. 544, 557 (1980). The inquiry is subjective and the district court's findings may only be disturbed on appeal if they are clearly erroneous. United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990).
 
 
 7
 The magistrate judge specifically credited the testimony of the two officers while finding Hart's "contention that the consent to the search was limited incredible." When testimony calling into question a witness's credibility is dispositive of a case, the appellate court must be satisfied that the district judge has exercised his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate judge's report. Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir.1985) (citing United States v. Elsoffer, 644 F.2d 357, 359 (5th Cir.1981)). The district court's final order states:
 
 
 8
 The court has reviewed the transcript of the hearing before Magistrate Denson. After this de novo review the court is convinced that the findings of fact proposed by the magistrate are supported by the record and that his conclusions of law are legally sound. Accordingly, the objections of defendant are overruled, the court adopts the findings of fact and conclusions of law of Magistrate Denson as its own, and the motion to suppress is DENIED.
 
 
 9
 Accordingly, the facts as found by the magistrate judge support the conclusion that Hart did not limit the scope of consent, nor did he attempt to revoke that consent at any time. Hart's statements to the officers to "hurry up" and to "get in and get out" do not serve as revocations of consent. See Mendenhall, 446 U.S. at 559 (trial court did not err in viewing defendant's statement that "she had a plane to catch" as "simply an expression of concern that the search be conducted quickly" rather than as a limitation of the scope of the search). Additionally, when asked by the court whether he ever attempted to revoke his consent, Hart responded that he had not:
 
 
 10
 The court: After you got in the trailer did you tell them the search was over, your consent was withdrawn or anything to that effect?
 
 
 11
 Witness: When I found the bag and grinder and handed it to them I said let's go. That's when they called [another officer] on the radio and he said he wanted a thorough search and I didn't say nothing after that.
 
 
 12
 We hold that the district court did not err in denying Hart's motion to suppress the evidence seized in the trailer. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not significantly aid the decisional process.
 
 AFFIRMED
 
 
 *
 The search also turned up three loaded guns which formed the basis for count two of Hart's indictment: use of a firearm during or in relation to a drug trafficking crime in violation of 18 U.S.C. § 924. The jury acquitted Hart on this count