764 F.2d 1097
 38 Fair Empl.Prac.Cas. 417,
38 Empl. Prac. Dec. P 35,521,
18 Fed. R. Evid. Serv. 1057
Gladys CUNNINGHAM, Plaintiff-Appellant,
v.
HOUSING AUTHORITY OF the CITY OF OPELOUSAS d/b/a Opelousas
Housing Authority, Defendant-Appellee.
 No. 84-4481.
 United States Court of Appeals,
Fifth Circuit.
 July 5, 1985.
 
 Raymond L. Simmons, Baton Rouge, La., Aaron Harris, Opelousas, La., for plaintiff-appellant.
 Felix A. DeJean, III, Thomas J. DeJean, Opelousas, La., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before REAVLEY, JOHNSON, and HIGGINBOTHAM, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gladys Cunningham appeals from an adverse judgment in her Title VII sex discrimination case against the Housing Authority of the City of Opelousas, Louisiana (Housing Authority), for its failure to hire her as executive director of the Housing Authority. The district court concluded, after a full trial, that Cunningham had failed to meet her burden of demonstrating intentional discrimination. This Court affirms the judgment of the district court.
 
 I. BACKGROUND
 
 2
 The Housing Authority is directed by a five member board. At the time of the events critical to the determination of this case, three of those members were appointed by the then Mayor of Opelousas, Joe Powers. The other two board members were not Powers' appointees; they also were not politically aligned with Powers. Prior to July 4, 1977, the position of Housing Authority executive director was filled by Ashton Giron. In March 1977, the Housing Authority board attempted to remove Giron and replace him with Bill Soileau. Giron, however, obtained a temporary restraining order preventing his replacement by Soileau. Eventually, Giron abandoned his claim for injunctive relief, and he resigned his position on June 30, 1977. On July 4, 1977, the board hastily called a special meeting and voted to replace Giron with Soileau.
 
 
 3
 Gladys Cunningham (Cunningham) is a female who was then (and is now) employed by the Housing Authority. Prior to the July 4th meeting, Cunningham was employed by the Housing Authority as day care director, a position she had held for some time. When Cunningham learned of Giron's resignation, which was some time before the July 4th meeting, she informed the chairman of the board that she intended to apply for the position of executive director. Cunningham learned of the hastily called July 4th meeting and attended it. During the meeting, Cunningham attempted to address the board in order to inform the entire board of her interest in the executive director position. The board denied her that opportunity.[1] The board then formally hired Soileau, even though Cunningham was better qualified for the position.[2]
 
 
 4
 Cunningham sued the Housing Authority alleging sex discrimination in violation of Title VII, 42 U.S.C. Sec. 2000e, et seq.; 42 U.S.C. Secs. 1981, 1982, and 1983; and the fifth and fourteenth amendments to the United States Constitution.[3] Cunningham's case was tried to the court, and the district court concluded that Cunningham failed to meet her ultimate burden of proving discrimination on the basis of sex. The district court concluded that Soileau was hired because of the local political situation:
 
 
 5
 The evidence clearly indicated and I find that the three black board members, Norton, Richards, and Robertson selected Soileau for carrying political water for Mayor Powers. Soileau had actively supported Powers in his successful race for mayor. Soileau had previously run for sheriff in St. Landry Parish and was very active in parish and city politics.
 
 
 6
 Record Vol. I at 186.
 
 
 7
 Cunningham appeals asserting two grounds of error. As her first ground of error, Cunningham asserts that the district court erred in concluding that the Housing Authority had rebutted her prima facie case of discrimination for two reasons. First, Cunningham asserts that the Housing Authority did not sufficiently articulate that Soileau's hiring was politically motivated. Second, Cunningham asserts that the Housing Authority's reason, a politically motivated appointment, is not a legitimate, nondiscriminatory reason. As her second ground of error, Cunningham argues that the district court, after it had taken the case under submission, abused its discretion by ordering the parties to take the deposition of the former mayor specifically for the purpose of developing further facts regarding the Housing Authority's political motivation.[4] This Court finds no error; the judgment of the district court is affirmed.
 
 II. DISCUSSION
 
 8
 As a threshold matter, Cunningham asserts that she was not required to prove intentional discrimination. Cunningham misconstrues the law in this circuit. This Court has stated on a number of occasions that the disparate treatment model of proving discrimination is applicable in situations involving subjective hiring and promotion decisions. Under that model, the plaintiff bears the burden of proving intentional discrimination.
 
 
 9
 The use of subjective criteria to evaluate employees in hiring is analyzed, not under the disparate impact model, but instead under the disparate treatment model.... To prove disparate treatment, the plaintiffs must prove discriminatory intent....
 
 
 10
 Discriminatory intent may be established by direct or circumstantial evidence.
 
 
 11
 Walls v. Mississippi State Department of Public Welfare, 730 F.2d 306, 321-22 (5th Cir.1984) (emphasis added, citations omitted). See Vuyanich v. Republic National Bank, 723 F.2d 1195, 1201-02 (5th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984); Carroll v. Sears, Roebuck & Co., 708 F.2d 183, 188 (5th Cir.1983) ("The use of subjective criteria to evaluate employees in hiring and job placement decisions is not within the category of facially neutral procedures to which the disparate impact model is applied."). See also Lewis v. NLRB, 750 F.2d 1266, 1271 (5th Cir.1985) (disparate treatment analysis was properly applied to N.L.R.B. subjective promotion procedures). This Court holds that the district court properly required Cunningham to prove intentional discrimination.
 
 
 12
 To establish a prima facie case of sex discrimination in a Title VII case, the complainant must demonstrate that she applied for and was qualified for a job for which the employer was seeking applicants; despite her qualifications, she was rejected; and after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The district court found that Cunningham met this initial burden. This finding is not appealed.
 
 
 13
 With that evidence, the burden of production shifted to the Housing Authority "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677; Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 257-58, 101 S.Ct. 1089, 1095-96, 67 L.Ed.2d 207 (1981). The district court found that the Housing Authority had successfully rebutted the plaintiff's prima facie case by establishing that the Soileau selection "was merely the reaffirmation of the March 1977 decision by three board members to repay Soileau for his political support of Powers by appointing Soileau as the executive director." Record Vol. I at 188.
 
 
 14
 Cunningham challenges the district court's conclusion that the Housing Authority successfully rebutted her prima facie case. Cunningham first asserts that the defendant did not articulate that its failure to hire her was politically motivated. Second, Cunningham argues that even if the defendant did articulate its reason, the reason is not a legitimate nondiscriminatory reason.
 
 
 15
 This Court need not reach Cunningham's specific allegations of error. In EEOC v. Exxon Shipping Co., 745 F.2d 967 (5th Cir.1984), this Court stated: "[B]y the time a fully-tried case reaches us on appeal, the parties' showing at the preliminary levels of the framework is largely irrelevant.... We need address only the propriety of the ultimate finding of discrimination vel non." 745 F.2d at 972 (citations omitted); United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1982); Lyford v. Schilling, 750 F.2d 1341, 1345 (5th Cir.1985) (per curiam) ("Once the case has been fully tried, the need to analyze each separate function of the McDonnell-Burdine analysis 'drops from the case.' ").
 
 
 16
 By focusing on the defendant's burden, Cunningham seeks to evade the ultimate question of discrimination vel non, Aikens, 103 S.Ct. at 1481, and its review under the clearly erroneous standard, Exxon Shipping, 745 F.2d at 973. In this case, the district court found that Cunningham failed to prove discrimination on the basis of her sex, and that finding is reviewed under the clearly erroneous standard. Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Cunningham does not specifically argue that the district court's negative determination of the discrimination issue is clearly erroneous. Nevertheless, this Court has carefully reviewed the record, and we are not left with a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). The district court's finding that Cunningham failed to meet the ultimate burden of proving intentional discrimination is not clearly erroneous.
 
 
 17
 As a final matter, the plaintiff asserts that the district court abused its discretion by ordering the parties to take the deposition of the former mayor after the court had taken the case under submission. This Court finds no error. Rule 614 of the Federal Rules of Evidence specifically authorizes the district court to call witnesses on its own motion. While this power is more often used in the context of a criminal case, see Fed.R.Evid. 614(a) advisory committee note, courts have called their own witnesses in civil cases as well. One of the reasons for giving the court this authority is so that the court will not be "imprisoned within the case as made by the parties." Id.
 
 
 18
 We find that ordering the taking of this deposition is the equivalent of the court calling its own witness. The fact that the court acted after submission of the case did not prejudice the plaintiff. This is particularly true in cases, such as this one, which are tried to the court and not to a jury. The plaintiff's counsel was able to cross examine the witness during his deposition. Moreover, both sides were allowed to submit briefs concerning the relevancy of the former mayor's testimony to the question of the political motivation behind Soileau's hiring. Previously, this Court found no error in a situation where the district court called a witness on its own motion after the party had rested its case. See Capital Marine Supply, Inc. v. M/V ROLAND THOMAS, II, 719 F.2d 104, 107 (5th Cir.1983). Likewise, this Court finds no error here. This Court emphasizes that the instant case was tried to the court, and that the district court retained a posture of impartiality throughout the litigation. There was no abuse of discretion.
 
 III. CONCLUSION
 
 19
 For the reasons stated above, the judgment of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 One of the issues at trial was whether Cunningham had actually applied for the position. The Housing Authority contended that Cunningham had not applied for the vacancy, and that was the reason that she was not considered for the position. The district court found, however, that Cunningham had indeed applied for the position, and that finding is not challenged in this appeal
 
 
 [2]
 The district court found that Cunningham was more qualified for the position than Soileau. Cunningham's credentials include a high school diploma, a bachelor of arts degree in elementary education, and certificates for attending several pertinent training sessions. Soileau, on the other hand, was a high school graduate with fourteen years of experience as a chief deputy sheriff
 
 
 [3]
 Cunningham also alleged race discrimination, but that claim was dropped
 
 
 [4]
 The pertinent part of the order stated:
 After a conference call with the parties, I ordered that the deposition of the 1977 mayor of Opelousas be taken and filed within 15 days. The defendant was directed to order from the court reporter any testimony that relates to the political relationship between Soileau and the members of the Opelousas Housing Authority Board. After this testimony is transcribed and filed in the record, both parties should file simultaneous briefs within 15 days relating to whether the decision to hire Soileau was a political decision designed to reward a political ally.
 Record Vol. I at 172.