Dr. Janet I. MERRILL,
Plaintiff-Appellant,

v.

SOUTHERN METHODIST UNIVERSITY, Defendant-Appellee.

No. 86–1161
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1986.

Frank P. Hernandez, Dallas, Tex., for plaintiff-appellant.

John H. McElhaney, Michael H. Collins, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

On December 28, 1979, Southern Methodist University (SMU) notified Dr. Janet I. Merrill (Merrill) that it would not extend tenure to her. Consequently, she sued SMU, charging it with violating Title VII of the 1964 Civil Rights Act by discriminating against her on the basis of sex and religion. After a three-day bench trial, the district court held that many of the allegedly discriminatory acts were time-barred. As to the remaining claims, the court found that Merrill failed to establish intentional discrimination and held in SMU's favor. Merrill appeals. We affirm.

**Facts and Proceedings Below**

Appellant Merrill holds a master's degree from the University of Notre Dame and a doctorate in education from Columbia University. Her doctoral emphasis was in guidance, particularly in elementary education. In 1968, after receiving her degree from Columbia, she moved with her husband to Lenox, Massachusetts, where they both taught at Berkshire Christian College, which had an enrollment of about 150 students and offered no graduate work. Merrill also taught part-time at the College of Our Lady of the Elms, a nearby Catholic women's institution with an enrollment of about 600. Merrill was a tenured full professor at Berkshire Christian College and had the title of lecturer at Our Lady of the Elms.[1]

In 1975, Merrill's husband accepted an invitation to teach at the Dallas Theological Seminary. Merrill inquired about job openings at several colleges and universities in the Dallas area. Apparently, SMU was the only institution with an opening in her field. Merrill was one of 107 persons who applied for that position—Assistant Professor of Education—and though SMU ultimately hired a male, Dr. Ronald E. Pound, Merrill, along with two other women, was one of the six finalists. Merrill now asserts that SMU's 1975 selection of Pound over her was an act of intentional sex discrimination.

Some time later, a similar position became available at SMU. Dr. Pound perused the applications that had been received for the job he now held and chose Dr. Merrill to teach part-time during the spring of 1976. At the end of the semester, SMU offered Merrill a full-time, three-year contract, beginning August 30, 1976, as an untenured assistant professor in the Department of Education at the first-year salary of $13,250. Although she had been a tenured full professor at Berkshire Christian College, Merrill acceded to SMU's terms in writing. SMU gave Merrill three years' credit toward tenure eligibility and pledged to consider her for promotion no later than the last year of her contract. Merrill now contends that the terms of this contract—her rank, salary, and untenured status—were the result of intentional sex discrimination.

During the span of this contract, Merrill shared an office with another female teacher, and had difficulty procuring secretarial help to type her manuscripts. She alleged

---

1. The customary academic ranks are instructor, assistant professor, associate professor, and full professor. Instructor and assistant professor are generally not tenured positions; associate professor and full professor generally are tenured.

that this was the result of sex discrimination, because most male teachers had private offices and secretarial services. She allegedly carried heavier teaching loads and received lower pay raises than her male colleagues. The primary evidence supporting these two aspects of discriminatory treatment consisted of various charts and tables, which the district court admitted but did not greatly credit because the underlying data was largely hearsay and the faculty sample underlying the statistical comparisons was very small.

Until she was denied tenure, Merrill was satisfied with conditions at SMU. None of these circumstances seemed discriminatory to her and she apparently never vigorously protested any of them. In September 1978, the tenured faculty of the Department of Education, eight men and two women, reviewed Merrill's performance and voted to deny tenure to her. She then requested, and was given, the opportunity to make a personal appeal to the faculty. However, the faculty reaffirmed its previous unfavorable decision. Her colleagues evaluated Merrill in four areas: teaching ability, published research, service to SMU and her profession, and needs of the department. Only her teaching received a favorable vote.[2] Not one of the ten tenured faculty members voted her publications sufficient to merit advancement. Her articles were unfocused, short, and not published in refereed journals. At trial, Merrill admitted that she had not published widely or impressively. She fared somewhat better in the area of service to SMU and her profession, though even here a heavy majority of the department faculty rated her deficient. Her most significant contribution was sponsoring a student group that assembled a project designed to teach the virtues of the free enterprise system to elementary and high school students. This project,

entered in a national competition sponsored by General Motors, placed second. The final area of evaluation focused less on Merrill than it did on the needs of the Department of Education. Not one faculty member voted that a need existed for Merrill in the department. Indeed, enrollment was dwindling.[3]

After the faculty's second rejection, in November 1978, Merrill appealed to James Early, Dean of the College of Humanities and Science, of which the Department of Education was a part. Early convened the College Executive Committee. This committee included two women. The committee unanimously affirmed the Education Department faculty decision. Early informed Merrill of this result on December 13, 1978. Merrill next appealed to the SMU Provost, James Brooks, who assembled an ad hoc committee to review Merrill's case. She was permitted to nominate two persons, one of whom the provost appointed to a position on the three-person committee. Merrill's representative on this ad hoc committee, a woman, joined the other two members in voting against her. Brooks informed Merrill of this decision on December 28, 1979.

Dr. Merrill asserts that this tenure decision was the result of intentional sex discrimination. She asserts that she had written as prolifically as her male colleagues who had tenure. She contends that she was a victim of discrimination on the basis of religion because many of her articles were published in religious-type magazines or were based on religious assumptions, and that her colleagues must have therefore discredited the articles. She stresses that her service to SMU and her profession was exemplary, citing the General Motors project, workshops conducted for various groups, and professional meetings attend-

2. The tenured faculty voted as follows:

| | Yes | No | Abstain |
|---|---|---|---|
| Teaching | 7 | 2 | 1 |
| Research | 0 | 9 | 1 |
| Service | 3 | 6 | 1 |
| Needs | 0 | 9 | 1 |

3. Some time after Merrill was denied tenure, but before trial, SMU disbanded the Department of Education and replaced it with the Teacher Preparation Program. This was apparently necessitated by falling enrollment in the education program.

ed. Merrill argues that the faculty had no right to consider the department's needs when it voted against her because this was not a criterion she had been forewarned to address in her presentation. She alleged that it was applied for the first time in her case.

After denying her tenure, SMU gave to Merrill a "terminal" contract for 1979–80, at the end of which Merrill's employment at SMU ended. She subsequently secured a teaching position at Dallas Baptist University, where her starting salary was about $6,000 more per year than her final salary at SMU. Merrill testified that she would not return to SMU except as a tenured full professor.

The district court held that several of Merrill's claims were time-barred. She filed her first complaint with the EEOC on November 16, 1979, and followed this with a second complaint on May 23, 1980. The court barred recovery on any alleged discriminatory act occurring more than 180 days before November 19, 1979. This eliminated many of her claims, such as those based on the initial terms of employment. Thus the court was left to try only claims based on the denial of tenure and allegedly unequal pay. In findings of fact and conclusions of law recited from the bench, the court held that Merrill had failed to show that she was a victim of intentional discrimination.

On appeal, Merrill raises five issues: (1) the district court's holding that certain claims were barred by limitations, (2) and (3) the district court's decision that the tenure denial and pay differentials were not motivated by intentional discrimination,

(4) the district court's refusal to certify a class of female SMU employees and its failure to hold an evidentiary hearing on certification, and (5) the district court's refusal to admit evidence of a settlement between SMU and the Department of Labor regarding alleged sex discrimination at SMU.

**Discussion**

### I. *Title VII Limitations Period*

■ The district court held that any Title VII claim arising prior to May 20, 1979, *i.e.,* more than 180 days prior to November 16, 1979, the date Merrill lodged her first charge of discrimination with the EEOC, was barred. We agree. This ruling excluded all claims except those based on wage discrimination and the tenure denial, including claims based on Merrill's original terms of employment, the lack of secretarial assistance, the lack of research leave, and the fact that Merrill shared an office with another professor.[4]

Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), requires a discrimination victim to file a complaint with the EEOC within 180 days of the act's occurrence. Any act occurring more than 180 days prior to filing "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).[5] Merrill does not dispute this rule, nor has she ever sought redress for stale discrimination under the "continuing violations" theory that

---

4. During her last year, one of Merrill's classes was given to Dr. Pound to teach and Merrill objected. This act was within the limitations period. However, there was no evidence that the decision resulted from intentional sex discrimination. Pound was qualified to teach the course, and had asked to teach it. Merrill's final year at SMU was apparently a transition period.

5. The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). In this case, however, there are no such justifications for tolling the limitations period.

we analyzed in *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir.1983), *on appeal following remand*, 783 F.2d 1270 (5th Cir. 1986). Instead, she argues that in determining whether a particular claim is time-barred, a court should focus on the date the victim first perceives that a discriminatory motive caused the act, rather than the actual date of the act itself. Merrill says her claims are timely because she did not fully appreciate the discriminatory animus underlying SMU's treatment of her until June 15, 1979. Actually, however, the evidence shows that appellant became convinced that she had been a victim of sex discrimination at SMU during late September 1978, and made informal inquiries of the EEOC at that time. Further, appellant's theory is not supported in existing law.

The leading case on this subject is *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). It emphasizes that the limitations period starts running on the date the discriminatory *act* occurs. 101 S.Ct. at 504. This Circuit has also consistently focused on the date that plaintiff knew of the discriminatory *act*. For example, in *Cervantes v. Imco Halliburton Services*, 724 F.2d 511 (5th Cir.1984), we said, "Under established federal law, the 180-day limitations period for Title VII claims ... begin[s] to accrue 'when the plaintiff knows or reasonably should know that the discriminatory act has occurred.'" *Id.* at 513 (quoting *McWilliams v. Escambia County School Board*, 658 F.2d 326, 330 (5th Cir.1981)). These holdings cannot be reconciled with Merrill's proposed rule. It might be years before a person apprehends that unpleasant events

in the past were caused by illegal discrimination. In the meantime, under Merrill's theory, the employer would remain vulnerable to suits based on these old acts. Merrill's proposal is inconsistent with the Supreme Court's language in *Ricks* that the Title VII limitations period is partially designed to "protect employers from the burden of defending claims arising from employment decisions that are long past," 101 S.Ct. at 503, and its comment in *Evans* that employers are entitled to treat past acts as lawful when the employee does not file a charge of discrimination within the statutory time. 97 S.Ct. at 1889. The district court did not err in its application of the limitations period.

## II. *The Denial of Tenure*

■ Merrill chose to frame her claim as a case of disparate treatment. The Pretrial Order makes this clear. In a disparate treatment case, as the district court understood, "the plaintiff bears the burden of proving intentional discrimination." *Cunningham v. Housing Authority*, 764 F.2d 1097, 1099 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985). Judge Fish found that SMU had not intentionally discriminated against Merrill, and we review that finding under the clearly erroneous standard. *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 1789, 1791, 72 L.Ed.2d 66 (1982); *Cunningham*, 764 F.2d at 1100. Unless we have a "definite and firm conviction" that a mistake has been committed, we will not reverse. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). We have no such conviction in this case.[6]

---

**6.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), prescribe an orderly pattern for the litigation of Title VII claims. Under these cases, a Title VII plaintiff must present a *prima facie* case of discrimination. This places on the employer the burden of producing a legitimate nondiscriminatory justification for his action. If the employer meets this burden of production, plaintiff can resurrect his *prima facie* case, and proceed to victory, by showing that the

employer's justifications were pretextual. *See generally Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir.1985) (discussing the shifting burdens in Title VII litigation). However, "by the time a full-tried case reaches us on appeal, the parties' showing at the preliminary levels of the framework is largely irrelevant.... We need address only the propriety of the ultimate finding of discrimination *vel non.*" *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 972 (5th Cir.1984) (citing *United States Postal Service Board of Governors v. Aikens*, 460

The record discloses ample evidence that SMU had legitimate justifications for denying Merrill tenure. Merrill's publications were sufficiently weak to prevent us from saying that the district court clearly erred in finding that SMU's reliance on this justification was not a pretext for intentional discrimination. Merrill asserted that she published as frequently as her male colleagues. However, academic scholarship is not measured by volume alone, but by the comprehensiveness and direction of the research. Moreover, much of Merrill's work was printed in journals with little or no recognition in the academic community. Merrill's colleagues, including females, overwhelmingly rated her deficient in this area.

Merrill's complaints that SMU should not have weighed its needs in deciding whether to grant her tenure are also not well-founded. There was testimony at trial that enrollment in the education graduate programs was "dangerously shrinking" at the time Merrill was denied tenure, and the subsequent dissolution of the Education Department lends credence to SMU's position that it did not need Merrill as a tenured faculty member. Title VII does not require employers to ignore harsh economic realities; the district court did not clearly err in rejecting Merrill's arguments based on this factor.

Merrill presented a number of charts and tables comparing her teaching load, salary, and other characteristics with those of her male colleagues. This evidence tended to show unequal treatment of Merrill, but the district court gave these charts and tables little weight because many of them were based on hearsay evidence and they all drew from a very small sample. We have cautioned against over-reliance on raw numbers in Title VII litigation because numbers can be misleading if not properly compiled. *See, e.g., Hill v. K-Mart Corp.,* 699 F.2d 776, 780–81 (5th Cir.1983). In at least two instances, flaws in Merrill's homemade comparisons were revealed at trial. She admitted that one statistic, "student clock hours," which suggested her load was disproportionately heavy, failed to reflect time consumed by the administrative responsibilities of some of her male colleagues. Another chart compared the total percentage increase of her salary with the increase in male salaries. The chart suggested that the men had received a higher increase than she, yet Merrill admitted that the percentage increase of at least one man who had started several years before she had was calculated from the year he was hired, rather than from the year she began. The district court did not abuse its fact-finding powers in determining not to attach controlling significance to Merrill's statistical evidence.

After carefully examining the entire record in this case, we hold that the district court's finding that SMU did not intentionally discriminate in its tenure decision is not clearly erroneous.[7]

### III. *Discrimination in Pay*

A plaintiff who alleges pay discrimination under Title VII is entitled to recover back pay "for a period beginning not more than two years before the filing of the EEOC claim." *Sellers v. Delgado College,* 781 F.2d 503, 505 (5th Cir.1986). The Title VII plaintiff need not necessarily prove that she performed work equal to that of her better paid male colleague. *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981); *Plemer v. Parsons-Gilbane,* 713 F.2d 1127, 1132 (5th Cir.1983). Of course, such a disparity, if inadequately explained by the defendant, would usually

U.S. 711, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *see also Cunningham,* 764 F.2d at 1100 (same).

7. During closing argument below, Merrill's counsel acknowledged that "the religious discrimination here doesn't appear to be very strong...." We believe this understates the

matter and hold that the district court did not clearly err in finding that no intentional religious discrimination existed. There was ample testimony regarding the perceived deficiency of Merrill's publications, but none of it suggested that their religious tenor motivated this evaluation.

be weighty evidence of discrimination forbidden by Title VII, 42 U.S.C. § 2000e–2(a)(1). If plaintiff does not establish that she performed comparable work, we hesitate to mandate a finding of intentional discrimination on the basis of the pay differential alone in the absence of evidence of the type adduced in *Gunther* and *Wilkins v. University of Houston*, 654 F.2d 388 (5th Cir.1981), *cert. denied*, 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982), where it was shown that the employers unexplainedly departed from objective pay criteria they had adopted. *Plemer*, 713 F.2d at 1133–34. In this case, Judge Fish found that Merrill had not "shown that the duties that she was performing were comparable to those of the male members of the faculty against whom she is comparing herself." Merrill also did not suggest that SMU failed to abide by preannounced (or otherwise adopted) objective pay criteria. Instead, she relied on the charts and tables discussed earlier. Those materials did indicate that SMU paid Merrill less than her male colleagues, but in most instances her statistics did not account for the many neutral factors that "operate simultaneously to influence the amount of salary a faculty member receives." *Wilkins*, 654 F.2d at 402; *see Plemer*, 713 F.2d at 1137–38. These factors include quality of prior experience, education, length of service, and professional achievements. *See Wilkins*, 654 F.2d at 402; *Plemer*, 713 F.2d at 1138. A few of Merrill's charts included information on some of these factors—such as education and years of experience—but even here, the statistical picture was incomplete. For example, one chart showed Merrill with many more years experience teaching in higher education than some of her male colleagues who were paid more. But the chart did not disclose *where* the prior teaching occurred. It might be reasonable for a university to consider five years of teaching at a prominent university with a graduate program, surrounded by challenging and accomplished faculty colleagues, more valuable than twice as much experience at a vastly smaller, obscure institution without such a program. Taken as a whole, Merrill's statistical proof failed fully to account for these factors, and so, on this record, did not require the district court to find in her favor on her wage discrimination claim.

We recognize that these evidentiary standards may mark a challenging course for a claimant like Merrill. But if we do not adhere to them, we will risk substituting our uninformed judgment for the employer's "essentially subjective assessment of the value of the differing duties and responsibilities" of various academic positions. *See Plemer*, 713 F.2d at 1134. In this case, the district court found Merrill's statistical compilations unreliable and found also that she failed to show she was performing comparable work. We cannot say these findings were clearly erroneous. There was no other evidence from which to infer that Merrill's low salary was caused by intentional sex discrimination.

## IV. *Class Action*

In her "Class Action Complaint," filed December 30, 1983, Merrill sought to represent a class "composed of females, who are employed or who might be employed" by SMU and "who have been and who continue to be or who might be adversely affected by the practices complained of." Merrill's Motion for Certification, filed October 19, 1984, appears to narrow the proposed class to "professional" women. Despite the fact that Merrill was employed from 1976–77 to 1979–80, she sought to represent women employed from 1975 to 1985. Without holding an evidentiary hearing, the court refused to certify this class. Judge Fish relied solely on the parties' briefs, SMU's affidavits, and Merrill's deposition.

### A. *Certification*

■ We review the district court's refusal to certify the class on an abuse of discretion standard. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). On appeal, however, we examine not only the evidence available to the district court, but also "the facts developed at

the trial of the plaintiffs' individual claims." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 n. 12, 97 S.Ct. 1891, 1898 n. 12, 52 L.Ed.2d 453 (1977). As in all class actions, a Title VII class cannot be certified unless it meets the requisites of Fed.R.Civ.P. 23(a), *General Telephone Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Merrill's certification attempt founders on Rule 23(a).

▄▄ The evidence in this case suggests that many women were paid more than Merrill and that there were a number of tenured women faculty members. This does not necessarily mean that better situated women were not victims of discrimination, but it demonstrates the difficulty in the university academic setting of defining a class to meet the commonality and typicality requirements of Rule 23. Sex discrimination may take such a wide variety of guises in this setting that the facts of one woman's claim may be markedly different from another's. Moreover, SMU would have individually tailored justifications for the alleged discrimination in each case. Here, the evidence adduced to prove and rebut institutional discrimination would not have overlapped to an extent consistent with the goal of efficiency that underlies Rule 23(a). *See Falcon*, 102 S.Ct. at 2370 n. 13. For example, after application of the relevant limitations period, Merrill's chief claim was denial of tenure. Each tenure denial turns on unique facts: the quality of *this* professor's teaching, the substance of *her* publications, the range of *her* service. No particular "disparate impact" rules or policies of SMU were alleged or shown. The class action that Merrill proposed would have quickly disintegrated into a plethora of individual claims. Rather than address this obvious danger, Merrill relied on vague allegations of common-

ality that the district court found insufficient to justify certification. This was a sound exercise of its discretion.

The corollary to our affirmance of the district court's finding on the merits is that Merrill was never a member of the class she seeks to represent. *East Texas*, 97 S.Ct. at 1896–97 (stating that plaintiffs were not class members because they had not been injured by the alleged discrimination); *Everitt v. City of Marshall*, 703 F.2d 207, 211 (5th Cir.), *cert. denied*, 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1982) (holding that plaintiff who lost her individual claim of discrimination could not be a class representative even if she may have appeared adequate prior to trial). Because she is not a class member, her claims cannot be typical of other class claims, nor can she be an adequate class representative. In the absence of these elements, a class cannot be certified.[8]

### B. *Evidentiary Hearing*

▄▄ Rule 23 does not itself require an evidentiary hearing on the question of class certification. *Franks v. Kroger Co.*, 649 F.2d 1216, 1223 (6th Cir.1981); *Marcera v. Chinlund*, 565 F.2d 253, 255 (2d Cir.1977). However, we have stated on numerous occasions that the district court should ordinarily conduct an evidentiary hearing on this question. *E.g., King v. Gulf Oil Co.*, 581 F.2d 1184, 1186 (5th Cir.1981); *Shepard v. Beaird-Poulan, Inc.*, 617 F.2d 87, 89 (5th Cir.1980). Only in cases free from doubt, where "clear grounds exist[ ] for denial of class certification" may a district court escape this obligation. *E.g., Morrison v. Booth*, 730 F.2d 642, 644 (11th Cir.1984) (interpreting Fifth Circuit precedent); *see also Marcera*, 565 F.2d at 255 (reversing district court's certification denial—based on "pleadings, memoranda of law and affidavits of the parties" —reached without an evidentiary hearing,

---

**8.** Moreover, Merrill's financial resources were limited. Financing a class action can be costly, and Merrill appeared unable or unwilling to commit the resources necessary to properly litigate the class action she sought. Her attorney apparently advised he would try to raise the necessary funds from various civil rights groups, but this was speculative and the district court, who was rightfully concerned about Merrill's financial ability to properly represent all class members, was not required to certify the class on those assurances. *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 558–59 (5th Cir.1981) (stating that financial ability of class representative is not necessarily determinative, but is important).

because genuine fact questions remained as to whether the Rule 23(a) requirements were met).

■ Nonetheless, there are three reasons we will not remand for an evidentiary hearing. First, Merrill apparently never moved for a certification hearing, or at any time prior to this appeal objected to the lack of a hearing. We take a very dim view of parties who silently permit the trial court to slip into claimed error only to complain for the first time on appeal. Second, more than five months after any motion for class certification was last due to be filed under the local rules, Merrill, who had not filed such a motion, for the first time requested an extension of the time for filing. Although the district court granted the request, allowing another month for filing and fixing a time for response, the order granting this relief provided that the motion would be "deemed ripe for judicial resolution as of the filing date of defendant's response," thus specifying that the motion would be resolved on the matters submitted in support of and in opposition to it at that time. No objection to this portion of the order, nor any request for exception to it, or to consider other matters, or for an evidentiary hearing, was ever made. When appellant's class certification motion was ultimately filed, the mutually agreed discovery deadline on class certification issues had long passed. SMU's response to the motion was supported by Merrill's deposition, including numerous exhibits thereto, and three affidavits. Merrill, though she had ample time to do so, never sought to rebut the showing thus made by SMU. Finally, Merrill was in no way prejudiced by the absence of a hearing. In light of the district court's order that the certification motion would be "ripe for judicial resolution" as soon as defendant responded, Merrill had every incentive to file with her

certification motion, or at least describe beyond the vague generalizations she chose, any evidence that might create the factual uncertainty necessary to trigger an evidentiary hearing. Even on appeal, Merrill does not seriously assert that Judge Fish deprived her of the opportunity to present important evidence—her chief objections are directed at his refusal to certify, which we have affirmed. Any error in not conducting a hearing was harmless. *See Saxon v. Fielding,* 614 F.2d 78, 80 (5th Cir.1980) (plaintiffs never requested an evidentiary hearing and lost on the merits); *Camper v. Calumet Petrochemicals, Inc.,* 584 F.2d 70, 71 (5th Cir.1978) (refusing to remand for an evidentiary hearing because plaintiff lost his claim and was thus not a class member).[9]

## V. *Exclusion of Evidence*

■ Merrill complains that she was prevented from cross-examining an SMU official about an alleged settlement agreement reached between SMU and the Department of Labor concerning claimed sex discrimination, resulting from a complaint by an SMU law school professor. When Merrill's counsel asked the witness whether he knew of such an agreement, SMU's counsel objected, the court inquired of Merrill's counsel as to the relevance of the question, and counsel responded that it would show motive or intent. After several brief interchanges between Merrill's counsel and the district court as to the relevance of the inquiry, with the former finally saying the question pertained to liability, the district court said, "Despite [Federal Rules of Evidence] Rule 408? That rule says," proceeding to paraphrase it. Merrill's counsel then said, "Okay. I'll move on to something else." The matter of the settlement agreement was not broached again. We find no reversible error. While it is doubtful that

---

**9.** Although our affirmance demonstrates that Merrill could never represent the class she sought to have certified, we have not viewed her lack of class membership as a bar to her appeal of the district court's denial of certification. The Supreme Court has held that "representative" plaintiffs may appeal the denial of certification even if their individual claims become moot, *United States Parole Commission v. Ger-*

*aghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). We have fully considered Merrill's arguments on this issue. Moreover, our refusal to remand for an evidentiary hearing is not based on Merrill's nonmembership in the class, but rather on the factors discussed in the text.

the district court ever actually ruled on SMU's objection, it is in any event clear that Merrill's counsel never made or attempted to make any offer of proof as required by Fed.R.Evid. 103(a)(2). There is nothing in the record to suggest that the witness *was* aware of any such agreement as inquired about, and no proffer of evidence was made as to the agreement itself. This claim of error is without merit.[10]

### Conclusion

Having rejected each of Merrill's claims of reversible error, we affirm the judgment below.

AFFIRMED.

---

**10.** Merrill's brief in this Court has attached to it copies of two newspaper articles, labeled respectively plaintiff's exhibits 150 and 151, which recite that SMU entered into such a settlement in 1986 without admitting wrongdoing, the settlement resulting from a 1984 sex discrimination complaint by an SMU law school professor; some mention is also made of conditions at SMU in 1982 and 1983, but not before. These exhibits were never offered into evidence or made part of any offer of proof below, and hence there is obviously no basis for complaint as to them. Fed.R.Evid. 103(a)(2). Further, they are obviously inadmissible hearsay. They should not have been attached to counsel's brief.

We further observe that the record does not demonstrate that Merrill was prejudiced in respect to the settlement issue, even assuming it would have been admissible under Fed.R.Evid. 408 and a proper proffer had been made. Merrill left SMU in May 1980, and there is no suggestion that the settlement had anything to do with her situation or period of employment, or that it related to the Department of Education.