**Earlene PARKER, Plaintiff-Appellant,**

v.

**MISSISSIPPI STATE DEPARTMENT OF PUBLIC WELFARE,**
**Defendant-Appellee.**

No. 86–4234.

United States Court of Appeals,
Fifth Circuit.

March 9, 1987.

Firnist Alexander, Jr., Jackson, Miss., for plaintiff-appellant.

Sidney J. Martin, Sara E. DeLoach, Giles W. Bryant, Asst. Attys. Gen., Jackson, Miss., for defendant-appellee.

Before WISDOM, JOHNSON, and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge:

This Title VII case involves a challenge to the promotion of a white applicant in preference to a black. The trial court found that the black applicant, Earlene Parker, had failed to meet her ultimate burden of establishing that the promotion was racially motivated. Finding Parker's contentions on appeal unpersuasive, we affirm the judgment of the district court.

## I.

Earlene Parker was employed by the Mississippi Department of Public Welfare (MDPW) in 1977 as an eligibility worker.

Two years later she was promoted to a social worker position in the agency's Work Incentive (WIN) Program.[1] In October of 1982, Parker submitted an application for further promotion to a vacant Supervisor III position in the WIN Program. Lynn Daniels, a white female who like Parker worked for MDPW as a social worker, also applied for the vacant position. Parker and Daniels were the only applicants to submit applications by the October 18 deadline.

Mississippi civil service procedures required the State Personnel Board to test both applicants. Only after completing the Supervisor III test could either applicant interview for the position. Parker took the test in late October and scored a 77. Daniels, who postponed her initial test date because of a prior commitment, took the test on December 14 and scored a 94. Although Daniels waited until December 14 to take the test, she was notified on December 13 that MDPW had already scheduled her for an interview.

Parker and Daniels were each interviewed on December 17 by Carolyn Park, administrator of the WIN Program. Immediately after the interviews, Park recommended that Daniels be promoted to the vacant Supervisor III position. Park later testified that three factors led her to conclude that Daniels was the better qualified candidate: (1) Daniels scored significantly higher on the civil service test; (2) Daniels had more experience as a social worker, experience Park considered critical to success as a supervisor; and (3) Daniels had impressed her as the more assertive, articulate applicant. Based on Park's recommendation, the Social Services Department promoted Daniels to the position, effective January 1, 1983.

■ In response to Daniel's promotion and after exhausting her administrative remedies,[2] Parker filed the instant suit on

---

1. The WIN Program is a state administered program designed to provide training and employment for certain ADC recipients.

2. Parker filed a charge of discrimination on January 9, 1983, with the Equal Employment Opportunity Commission. The EEOC issued Parker notice of her right to sue on March 4, 1983. Parker then filed her complaint in federal district court within the applicable 90 day statutory period. 42 U.S.C. § 2000e-5.

May 20, 1983, alleging that MDPW discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[3] Specifically, Parker complained that MDPW refused to promote her because of her race. Following trial to a federal magistrate,[4] the magistrate, in a report and recommendation to the district court, found that Parker had established a prima facie case of employment discrimination, but that MDPW had rebutted this case by articulating a legitimate nondiscriminatory reason for the contested promotion decision. The magistrate further found that Parker had failed to establish that the proffered reason was pretextual and thus failed to meet her ultimate burden of proving discrimination on the basis of race. The district court adopted the magistrate's report and recommendation and entered judgment in favor of MDPW.

Parker appeals asserting (1) that the district court judgment is invalid because the magistrate lacked authority to try the case; (2) that the trial court erred in finding that MDPW had rebutted Parker's prima facie case of discrimination; and (3) that the trial court erred in finding in favor of MDPW on the ultimate question of discrimination *vel non.*

## II.

As a threshold issue, Parker asserts that the magistrate lacked authority to preside over the trial of this case. Under 28 U.S.C. § 636(c), reference of civil cases for full trial and entry of judgment by a magistrate is authorized only if the parties voluntarily consent. The Local Rules of the Southern District of Mississippi further require that the consent be in writing[5] and that the district judge execute a written order of reference. *See* S.D.Miss.R. 7(F). Citing the lack of either consent or an order of reference, Parker asserts that trial before the magistrate was unauthorized and that the district court's judgment based on that trial is invalid. Parker raises both these objections for the first time on appeal.

Parker's assumption that this case was referred pursuant to section 636(c) appears to be mistaken. While 636(c) authorizes both trial and entry of judgment by the magistrate, in this case judgment was entered by the district judge. The magistrate was only assigned to prepare a report and recommendation based on the testimony and other evidence presented at trial. The magistrate specifically informed the parties of their right to file objections to his report with the district judge. This is the procedure typically employed where a magistrate has been assigned responsibilities pursuant to 28 U.S.C. § 636(b)(3).[6]

■ With regard to Parker's challenge to the lack of a written consent form, section 636(b)(3) itself contains no such re-

---

3. Parker also alleged that MDPW's discriminatory promotion decision violated § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and § 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In this Circuit, specific consideration of these alternate remedies for employment discrimination is necessary only if their violation can be made out on grounds different from those available under Title VII. *See Watson v. Ft. Worth Bank & Trust,* 798 F.2d 791, 794 n. 4 (5th Cir.1986); *Rivera v. City of Wichita Falls,* 665 F.2d 531, 534 n. 4 (5th Cir.1982); *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir. 1980). Because Parker has not asserted any such distinction here, we give specific consideration only to her Title VII claim.

4. The record contains no order referring the case for trial before a magistrate. The case was apparently assigned to the magistrate pursuant to a "super calendar" implemented in the Southern District of Mississippi late in 1984 to reduce a backlog of cases awaiting trial. Cases were assigned to magistrates pursuant to the super calendar without orders of reference.

5. *See also* Fed.R.Civ.P. 73(b) (requiring parties to execute consent forms when a magistrate has been designated to exercise jurisdiction pursuant to 636(c)). In addition, this Court's recent en banc decision in *Archie v. Christian,* 808 F.2d 1132 (5th Cir.1987), holds that no civil trial may be conducted by a magistrate pursuant to § 636(c) without consent of all parties, given in writing and before trial commences.

6. Section 636(b)(3) provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."

quirement. Consent to a 636(b)(3) designation, if required at all, will be inferred from a party's failure to object to the designation at trial. *See Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 354 (5th Cir.1980) (consent or waiver inferred from party's failure to object at trial to 636(b)(3) designation). As explained in *Cruz v. Hauck*, 515 F.2d 322 (5th Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976):

> a party objecting to a reference should do so prior to or at the time of the reference. If this is infeasible, the objection should be made to the judge at the earliest possible opportunity. Such procedure permits the proper and efficient administration of the judicial process. Otherwise, a party disappointed with a master's report would be able to obtain "a second bite at the apple" by withholding his objection to the reference until after the report.

515 F.2d at 331 (citation omitted). With regard to Parker's complaint about the lack of a written order of reference, we are aware of no requirement that assignments pursuant to 636(b)(3) be in writing.[7] Local Rule 7 of the Southern District of Mississippi, which requires district judges to execute written orders, appears to apply only to 636(c) referrals.

**7.** Good practice indicates, however, that court orders of designation or reference should be in writing and state plainly under what statutory provision the court is proceeding. *See Archie v. Christian*, 808 F.2d at 1137 n. 4 (5th Cir.1987) (en banc). During oral argument, counsel for Parker stated that in the Southern District of Mississippi, written orders were usually issued in connection with 636(b) assignments or designations. This practice was apparently not followed in "super calendar" cases. *See supra* note 4.

**8.** In declining to reach this question, we avoid the further question of whether 636(c) has completely replaced 636(b)(3) as a means of referring civil actions for trial before a magistrate. In *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352 (5th Cir.1980), this Court upheld the consensual reference of a Title VII bench trial under 636(b)(3). In doing so, the Court noted that the reference in that case had oc-

■ Nevertheless, this case does not require us to decide whether the reference was pursuant to 636(c) or 636(b)(3), and we decline to do so.[8] Under either provision, Parker has waived any objections to the reference by failing to raise them at trial. Our recent en banc decision in *Archie v. Christian*, 808 F.2d 1132 (5th Cir.1987), holds that the failure to obtain the parties' consent is a procedural rather than jurisdictional defect, regardless of whether the reference is pursuant to 636(b)(3) or 636(c). As a procedural defect, it can be waived by a party who fails to raise an objection either at trial or on appeal. *Id.* 808 F.2d at 1137.

In *Archie* the district court had, without the parties' consent, referred a jury case for trial before a magistrate. Following trial, the district court adopted the magistrate's report and recommendation and entered judgment in favor of the defendant. On appeal a panel of this Court concluded *sua sponte* that the magistrate lacked jurisdiction to conduct the trial. *See Archie v. Christian*, 768 F.2d 726, 727 (5th Cir.1985). The panel first concluded that since 636(b) does not authorize the nonconsensual reference of jury trials, the reference was unauthorized under that provision. *Id.* at 728 (citing *Ford v. Estelle*, 740 F.2d 374, 380 (5th Cir.1984)). The panel then concluded that the reference also failed to withstand scrutiny when examined under 636(c). Re-

curred before Congress amended the Federal Magistrates Act in 1979 to include 636(c). *Id.* at 353 n. 1. The Court specifically reserved the question whether 636(c) had completely replaced district courts' 636(b)(3) authority to refer civil cases to magistrates for trial on the merits. *Id.* at 355 n. 3. In *Ford v. Estelle*, 740 F.2d 374 (5th Cir.1984), we decided part of the question reserved in *Calderon* by holding that "section 636(b)(3) cannot support reference of a civil action to a magistrate for jury trial, and to the extent that a case is to be tried to a jury it can be referred to a magistrate only upon consent of the parties under 636(c)." *Id.* at 381. The question remains, however, whether 636(b)(3) can support reference of civil actions for trial before a magistrate in nonjury cases like the instant Title VII action. *See also Parks v. Collins*, 761 F.2d 1101, 1105 n. 6 (5th Cir. 1985) (Whether the authority granted in § 636(b)(3) has been completely replaced by § 636(c) remains an unanswered question.).

fusing to construe the plaintiff's silence as consent, the panel concluded that express consent, as required by 636(c), was lacking. According to the panel, this lack of consent deprived the magistrate of jurisdiction and precluded the district court from entering a valid judgment based on the magistrate's report. *Id.*

This Court, sitting en banc, reversed the panel's conclusion that lack of consent was a jurisdictional defect. Instead, the Court held that failure to obtain the parties' consent "was a flaw in the procedure by which that judgment was arrived at: by generally delegating the conducting of jury trials to officials not authorized to do such work without consent of the parties and by the district judges adopting as his own the product of that improper process." *Archie v. Christian,* 808 F.2d at 1134 (emphasis deleted). Since the plaintiff had not objected to the procedural irregularity either at trial or on appeal, the Court concluded that the defect had been waived. *Id.* 808 F.2d at 1137.

Our decision in *Archie* requires a similar conclusion in the instant case: by failing to raise her procedural objections to the reference at trial, Parker has waived her right to do so on appeal.[9] We note that Parker complains of both the lack of consent and the district court's failure to execute a written order of reference. While *Archie* involved only a lack of consent, we have little difficulty concluding that the Court's characterization of that error as procedural is equally applicable here to the absence of a written order of reference.

### III.

Parker next challenges the trial court's finding in favor of MDPW on the merits of her Title VII disparate treatment claim. The trial court properly analyzed Parker's claim under the framework enunciated in *Texas Department of Community Affairs*

v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, Parker carried an initial burden of proving a prima facie case of discrimination. The trial court found that Parker met this initial burden.

Once Parker established a prima facie case, the burden of production shifted to MDPW "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. The trial court found that MDPW had successfully rebutted Parker's prima facie case by asserting "that Parker was less qualified for promotion than Lynn Daniels, based on [MDPW's] evaluation in terms of the applicants' tenure with the agency, the applicants' test scores, their personal interviews, and their work experience." Record Vol. II at 8.

Parker contends that the trial court erred as a matter of law in concluding that MDPW had articulated a legitimate nondiscriminatory reason for the promotion decision. We need not, however, consider this specific allegation of error. When a fully-tried case reaches this Court on appeal, the parties' showing at the preliminary stages of the Title VII analytic framework is largely irrelevant. Instead, this Court reviews only the trial court's finding on the ultimate question of discrimination *vel non. Bunch v. Bullard,* 795 F.2d 384, 396 (5th Cir.1986); *Cunningham v. Housing Authority of the City of Opelousas,* 764 F.2d 1097, 1100 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985); *EEOC v. Exxon Shipping Co.,* 745 F.2d 967, 972 (5th Cir.1984).

■ After hearing all the evidence, the trial court found that the legitimate nondiscriminatory reason offered by MDPW for the promotion decision was not pretextual.

---

9. Parker has not suggested that the procedures employed by the district court in referring this case for trial before a magistrate violated Article III of the Constitution, and we decline to consider the issue *sua sponte.* We simply note that

our decision here in no way reaches the question of whether mere silence and failure to object would constitute waiver of a constitutional violation.

Under the clearly erroneous standard of Fed.R.Civ.P. 52(a),[10] *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), this Court will affirm the trial court's finding unless, after carefully reviewing the record, we are left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

█ The record in the instant case reveals ample evidence to support the trial court's finding that MDPW's promotion decision was not racially motivated. Carolyn Park, administrator of the WIN Program, testified that she decided to promote Daniels on December 17, after interviewing both applicants, reviewing their applications, and receiving their test scores. Park concluded that Daniels was the better qualified applicant based in part on subjective factors, including her impression that Daniels was the more inquisitive, assertive, and articulate applicant. More significantly, Park also based her decision on objective factors including Daniels' significantly higher test score and longer tenure as a MDPW social worker. Given Park's testimony and the objective evidence of Daniels' superior qualifications, the trial court's finding in favor of MDPW was not clearly erroneous.

Parker's allegation that Daniels received preferential treatment throughout the selection process does not require a different conclusion. Contrary to Parker's allegation, each applicant received but a single interview. While Park had at least one informal discussion with Daniels about the position, Park testified that she was also willing to discuss the position with Parker.

Similarly, while Daniels was permitted to postpone her original test date for personal reasons, Parker produced no evidence that she was denied such a request. Parker also emphasizes that she waited several weeks following her test to be interviewed, while Daniels waited only three days. Rather than establishing preferential treatment, however, this fact simply reflects the consequence of Daniels' late test date combined with MDPW's reasonable decision to wait until both applicants were tested before conducting any interviews.

Finally, Parker cites evidence that MDPW departed from procedural norms by scheduling an interview with Daniels before receiving her test scores. While this evidence was certainly relevant to Parker's Title VII claim, it did not establish discriminatory intent as a matter of law. According to Park, she scheduled interviews at a time and place convenient to both applicants without realizing that she had not yet received Daniels' test score. The district court could properly credit Park's testimony that her error was inadvertent.

## IV.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

---

10. Parker filed no objections to the magistrate's report and recommendation. In *Nettles v. Wainwright,* 677 F.2d 404, 408 (5th Cir.1982) (en banc), this Court held that failure to file written objections to proposed findings and recommendations in a magistrate's report shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. This bar of appellate review occurs, however, only if the magistrate informs the parties that objections must be filed within ten days of the magistrate's report and that failure to do so will result in waiver of the right to attack contested factual findings on appeal. *See, e.g., Brue v. Heckler,* 709 F.2d 937, 939 (5th Cir.1983); *Ware v. King,* 694 F.2d 89, 91 (5th Cir.1982); *Deloney v. Estelle,* 679 F.2d 372, 373 (5th Cir.1982). In the instant case, the magistrate did not inform Parker of the consequence of failing to file objections. Therefore, we review the magistrate's factfinding under the clearly erroneous standard.